Stacy Scheff
LAW OFFICE OF STACY SCHEFF
P.O. Box 40611, Tucson, AZ 85717-0611
(520) 471-8333 • FAX (520) 300-8033
stacy.scheff@gmail.com
State Bar No. 028364
*Counsel for Plaintiff*

# DISTRICT COURT FOR THE UNITED STATES
# DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Raniere,<br><br>                  Plaintiff,<br><br>v.<br><br>Merrick Garland, US Attorney General; Collette S. Peters, Director, Federal Bureau of Prisons; Warden USP Tucson, Anthony Gallion, (all in their official capacities),<br><br>                  Defendants | Case No.: 4:22-cv-00561-JCH-PSOT<br><br>**MOTION FOR PRELIMINARY INJUNCTION**<br>(*Expedited Consideration Requested*)<br>(*Hearing Requested*) |

Plaintiff, pursuant to Fed.R.Civ.P. 65(b)(1), moves for a preliminary injunction against prison administrator Defendants, who are seeking to unlawfully hinder and obstruct Plaintiff's First and Sixth Amendment rights to communicate with his attorneys, their staff and his power-of-attorney, Suneel Chakravorty, during the pendency of direct appeal and post-conviction relief petitions. Specifically, Plaintiff seeks an ***urgent*** injunction allowing reasonable attorney visits and calls, and to prevent retaliatory transfer.

**I. BACKGROUND**

Plaintiff refers the Court to his Complaint (Doc. 1) for the factual background for this Motion.

1

Plaintiff's criminal case is complex and was tried to a jury during lengthy proceedings with numerous fact witnesses and evidentiary exhibits. Plaintiff has a Rule 33 motion currently pending before the trial court. Doc. 1, pp. 22-26. Serious and significant government misconduct has been alleged with the support of three separate experts, including a highly regarded, honorably retired FBI agent who once served as the unit chief of the digital forensic lab at Quantico.

During the two years that Plaintiff has been at USP Tucson, anyone who advocated for his innocence (other than U.S. licensed attorneys) was banned from communicating with him due to claims of being a threat to the safety and security of the institution. However, none of the official responses after the banning of these individuals shows any legitimate penological interests:

1. Suneel Chakravorty (Power-of-Attorney); Banned for both knowing Mr. Raniere prior to his incarceration through classes at NXIVM, and *not* knowing Mr. Raniere prior to his incarceration; for recording and publicizing Mr. Raniere speaking about his belief in his innocence; and for organizing individuals who support Mr. Raniere to express their support outside the MDC where Mr. Raniere was incarcerated between trial and sentencing. Doc. 1, pp. 5-14.

2. Nicole Clyne; Banned for being the recipient of a message, "Send her my love" from Mr. Raniere via fellow inmate Timothy Brooks. Doc. 1, pp. 14-19.

3. Dr. Danielle Roberts; Banned for publicly speaking out in support of Mr. Raniere's innocence. Doc. 1, pp. 19-20.

**4.** <u>Mexican Attorney Jorge de la Garza</u>; Banned for unknown threat to the safety and security of the institution. Doc. 1, pp. 20-22.

Local Attorneys Stoltz and undersigned have been banned from in-person legal visits with Plaintiff for the foreseeable future. Doc. 1, pp. 30-32. Undersigned has received one legal call for one hour on December 14, 2022. Doc. 1, p.32. This is insufficient to meet all of Plaintiff's legal needs, and appears to be done as the most recent acts in a long pattern of retaliation for Plaintiff's legitimate challenge to his criminal convictions.

Mr. Raniere is being held in the Special Housing Unit ("SHU") long past his exoneration for the incident which led to his placement there. During this time, legal visits have been done with Mr. Raniere in handcuffs, leg irons, and a belly chain, which make the visits extremely uncomfortable for him. Mr. Raniere was not deterred by this, and continued to attend all the legal visits that were required. In recent months, when Mr. Raniere was escorted to these visits, he was told by staff at USP Tucson that he was having too many legal calls and visits.

Mr. Raniere is currently housed in the SHU with a mentally unstable prisoner, Toni Fly, who in on record saying that they will kill any child sex offender that they can. Doc. 1, p.27. Mr. Raniere is reporting that prison officials are withholding Fly's medication, and that Fly is acting out violently. Doc. 1, p.32.

**II. LAW & ARGUMENT.**

Plaintiffs seeking a preliminary injunction generally must show that (1) their

3

claims are likely to succeed on the merits; (2) they will likely suffer irreparable harm without an injunction; (3) the balance of equities tips in their favor; and (4) the public interest favors an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *American Trucking Associations Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

The Ninth Circuit allows the above factors to be weighed using a sliding scale approach, whereby a strong showing in one factor may counterbalance a weaker showing in another. *E.g. Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2010); *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) ("plaintiffs must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and balance of hardships tipping in their favor").

For example, "if a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1058 (D. Ariz. 2018) *(quoting Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013). In demonstrating that there are "serious questions", a plaintiff need not demonstrate a probability of success on the merits but only a "fair chance of success on the merits." *Cascadia Wildlands v. Scott Timber Co.*, 715 F. App'x 621, 624-25 (9th Cir. 2017) (*quoting Republic of the*

*Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

Plaintiff here has shown at least serious questions going to the merits of his First and Sixth Amendment claims. Defendants are engaged in an escalating pattern of retaliation that has resulted in Plaintiff being housed in circumstances that threaten his safety and security, with no legitimate penological interest to support it.

**A. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM IN COUNT I, ASSERTING THAT DEFENDANTS ARE ACTIVELY FRUSTRATING AND INTERFERING WITH HIS FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS.**

***1.*** *Prisoners Have a First Amendment Right to Communicate with their Attorneys.*

Prisoners have a First Amendment right of access to the courts. Naturally, this right encompasses a prisoner's right to communicate with their attorneys - particularly those attorneys whose legal assistance involves "attack[ing] their sentences, directly or collaterally[.]" *Hebbe v. Pliler*, 627 F.3d 338, 343 (9th Cir. 2010) (internal citations omitted). While the First Amendment "does not guarantee inmates the wherewithal to transform themselves into litigating engines," *Lewis v. Casey*, 518 U.S. 343, 355 (1996), it does guarantee a prisoner's right to court access that is "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977) abrogated on other grounds by *Lewis v. Casey*, 518 U.S. 343 (1996).

Indeed, the Constitution at times requires prison administrators to "shoulder affirmative obligations to assure all prisoners meaningful access to the courts." *Bounds*, 430 U.S. at 824. *See also R.G. v. Koller*, 415 F. Supp. 2d 1129, 1161 (D. Haw. 2006)

(observing that "[p]rison officials must… eliminate undue barriers to inmate access [to the courts]")

    **2.** <u>This First Amendment Right Encompasses the Right of Prisoners to Speak with Paralegals Retained by the Attorney to Assist with the Provision of Legal Services.</u>

"The attorney-client privilege protects the client's confidential communications with an attorney, *or the attorney's agent,* for the purpose of securing legal advice." *United States v. Zegzula*, 42 F.3d 1404 (9th Cir. 1994) (emphasis added). Similarly, a prisoner's right to communicate with his attorney extends equally to the attorney's paralegal. The Ninth Circuit has consistently held that paralegals and other non-attorney professionals retained by the attorney are important to the attorney's ability to render legal advice. *See, e.g., United States v. Sanmina Corp*., 968 F.3d 1107, 1116 (9th Cir. 2020) (noting that a client must feel free to communicate candidly with "third parties who have been engaged to assist the attorney in providing legal advice."); *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978) (same). Similarly, the Ninth Circuit has held that attorneys' not infrequent reliance on paralegals to assist in the fact-finding effort "counts as professional legal services." *United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996).

    Nowhere is this principle more elevated than when the non-attorney's expertise is essential for the attorney to make sense of the facts in a case. A classic example is where the attorney and client *literally* speak different languages, and a non-attorney is needed to bridge the divide. In *United States v. Mikhel,* for example, the Ninth Circuit was confronted with a prisoner who spoke English as a second language, but whose non-

native speech patterns resulted in the "imprecise" conveyance of important concepts. Prison administrators prohibited an interpreter from joining the attorney line. Recognizing that prisons are authorized to impose restrictions that are reasonably related to penological interests, the Ninth Circuit nevertheless concluded that preventing interpreters from joining the attorney line amounted to an "exaggerated response to prison concerns and places an unacceptable burden" on the prisoner's right to consult with his attorney. *U.S. v. Mikhel*, 552 F.3d 961, 963 (9th Cir. 2009).

      Spoken language is not the only scenario in which an attorney requires the expert assistance of a non-attorney. "[A]ccountants, interpreters, or polygraph examiners" are all examples of non-attorney "outside experts engaged to assist the attorney in providing legal services to the client." *Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007). Such individuals often prove <u>indispensable</u> to the attorney because they "transmit[] or interpret[] client communications to the attorney." *Id.*

      Here, Mr. Chakravorty serves <u>precisely</u> this role on behalf of the attorneys of Tully & Weiss. During the months that Plaintiff's attorneys spent gathering evidence and preparing the Rule 33 petition for a new trial, Mr. Chakravorty played an <u>essential</u> role in interpreting computer data for the attorneys. Most notably, Mr. Chakravorty aided in translating voluminous amounts of metadata - information that is embedded within most computer files - revealing critical information about the dates, methods, and origins of document edits and document alterations.

      Prior to Tully & Weiss being retained, Mr. Chakravorty and Plaintiff spent months

discussing, analyzing, and theorizing about how this metadata contained in computer files affects Plaintiff's legal case. This collaborative process between Mr. Chakravorty and Plaintiff yielded some important revelations - later confirmed by *Daubert* experts - and included in the May 3rd 2022 Rule 33 petition for post-conviction relief  It is clear that Mr. Chakravorty is no garden-variety paralegal. But even if Mr. Chakravorty's role as paralegal were limited to filling out paperwork and aiding in the communication between attorney and client, the prison would still be precluded from cutting off communication, absent a legitimate penological interest.

### B.  PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM IN COUNT III, THAT DEFENDANTS' ACTIONS AMOUNT TO A VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE SPEECH WITHOUT FEAR OF RETALIATION.

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,11 and (5) the action did not reasonably advance a legitimate correctional goal. *See*, e.g., *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir.2000); *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005)

Here, the adverse actions are: restrictions on Plaintiff's contacts with his attorneys and power-of-attorney; banning Plaintiff's friends and supporters; and keeping Plaintiff in the SHU with a mentally unstable cellmate.  These are all being done because of protected conduct of speaking out and challenging his criminal convictions.  Plaintiff's First Amendment rights are being chilled by these actions because he is experiencing

escalating retaliation each time he exercises his rights, or supporters speak out on his behalf. Plaintiff is literally prevented from speaking to the public via supporters such as Chakravorty and Clyne because they have been banned from all communications with him. These acts of retaliation do not advance any legitimate correctional goal because each justification given has been revealed to be merely the hollow words repeated, "for the safety and security of the institution".

### C. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM IN COUNT III, THAT DEFENDANTS' ACTIONS AMOUNT TO A VIOLATION OF THE SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

Not only are Defendants' actions in cutting off telephone communication with Mr. Chakravorty a First Amendment violation, they also amount to a Sixth Amendment violation of Plaintiff's right to effective assistance of counsel. Indeed, the right to assistance of counsel "would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). Government restrictions on communication between criminal defendant and attorney violate the Sixth Amendment when imposed during a critical juncture of the legal representation. For example, the Supreme Court held that a violation of the Sixth Amendment occurs when the government prohibits a criminal defendant from communicating with his attorney for 17 hours during a critical juncture of his trial. *Geders v. United States*, 425 U.S. 80, 87 (1976); *See also Tucker v. Randall*, 948 F.2d 388, 390-91 (7th Cir. 1991) ("[t]he Sixth Amendment right to counsel would be implicated if plaintiff was not allowed to talk to his lawyer for the entire four-day

9

period.").

So strong is this Constitutional right that, even if Defendants were to proffer some legitimate countervailing interest, the tension "must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." *Geders,* 425 U.S. at 91. This is the key lesson of the Sixth Amendment. See, e.g., *Luis v. United States*, 578 U.S. 5, 10 (2016) (holding that the government's interest in "freezing" potentially ill-gotten proceeds is outweighed by the criminal defendant's Sixth Amendment right to use presumptively "untainted" funds to hire an attorney of choice); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (holding that a court's inherent authority to regulate the admission of attorneys does not overpower a criminal defendant's Sixth Amendment right to hire an attorney of choice).

This right also includes the right to communicate with paralegals who are retained by the criminal defense attorney. *See, e.g., Smith v. Coughlin,* 748 F.2d 783, 789 (2d Cir.1984) (ban on visits by paralegal personnel to convicted inmate violated the Sixth Amendment); *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001) ("Considering appellant's second argument—that appellees' refusal to allow him to see paralegal personnel denied him effective assistance of counsel—we agree with the district court that this claim is meritorious.").

**D. PLAINTIFF IS SUFFERING IRREPARABLE HARM AS A RESULT OF THE FIRST AND SIXTH AMENDMENT VIOLATIONS.**

Courts have held that access-to-counsel claims based on the government's wrongful interference strike at the "root... of the constitutional guarantee." *United States*

*v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006). As such, Plaintiff is likely to suffer irreparable harm because, absent injunctive relief, he will be deprived of <u>the most basic</u> constitutional protections under the First and Sixth Amendments. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (finding that a constitutional deprivation "unquestionably constitutes irreparable injury."); *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011) ("[C]onstitutional violations... generally constitute irreparable harm."); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("Plaintiffs faced irreparable harm in the form of a deprivation of constitutional rights."). This presumption of irreparable harm applies equally to prisoner cases. *Luckette v. Lewis*, 883 F.Supp. 471, 483 (D. Ariz. 1995) (finding that a prisoner who suffered a First Amendment violation enjoys a presumption of irreparable harm).

Additionally, the retaliation has advanced to the point of placing Plaintiff in physical danger of assault from his cellmate.

**D. THE EQUITIES TIP SHARPLY IN PLAINTIFF'S FAVOR**

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Counsel*, 555 U.S. 7, 24 (2008) (citation omitted). Here, the answer is clear: the harm to Plaintiff outweighs any conceivable hardship to Defendants. Indeed, Defendants are already required to have a system in place to allow secure and frequent communications between prisoners, their attorneys, and their attorneys assistants.

On Plaintiff's side is his constitutional right to communicate openly with this

counsel of choice, and aid his counsel in his defense, and his Sixth Amendment right to hire and utilize counsel of his choice. To the extent Defendants may cite financial hardship in allowing Plaintiff to communicate with a non-attorney paralegal, courts have "little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.'" *Harris v. L.A. Cty Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004) (*quoting Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir.1983)).

Any possible hardship that Defendants may identify is really no hardship at all, because Defendants are already required to follow the Constitution. "[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]" *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). Because it is "always in the public interest to prevent the violation of a party's constitutional rights," the balance of equities tip sharply in Mr. Raniere's favor. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal citations omitted). The equities tip in favor of a plaintiff where the burden to prison officials is mere "administrative inconvenience." *R.G. v. Koller*, 415 F.Supp.2d 1129, 1162 (D. Haw. 2006).

## III CONCLUSION.

For the foregoing reasons, Plaintiff requests an Order for the following relief:
- Plaintiff receive all legal calls and visits with attorneys that are requested by the attorney.
- Plaintiff's power-of-attorney, Suneel Chakravorty be recognized as a legal professional for the purposes of communicating confidentially with Plaintiff.

- Plaintiff be released from SHU and returned to his original unit.
- If Plaintiff has to stay in the SHU, that he get a single cell for safety,
- Plaintiff not be transferred to another prison.

DATED this 19th day of December, 2022 by

/s/Stacy Scheff
STACY SCHEFF
Attorney for Plaintiff