Stacy Scheff
LAW OFFICE OF STACY SCHEFF
P.O. Box 40611, Tucson, AZ 85717-0611
(520) 471-8333 • FAX (520) 300-8033
stacy@ScheffLaw.com
State Bar No. 028364
*Counsel for Plaintiff*

**DISTRICT COURT FOR THE UNITED STATES**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Keith Raniere,<br><br>　　　　Plaintiff,<br>v.<br><br>Merrick Garland, *et. al.*<br><br>　　　　Defendants | Case No.: 4:22-cv-00561-RCC-PSOT<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION.**<br>(***Expedited Consideration Requested***)<br>(***Hearing Requested***) |

Plaintiff, via counsel, replies in support of a Preliminary Injunction and Temporary Restraining Order at Doc. 14.  Defendants' opposition ignores Plaintiff's significantly expanded factual allegations and claims since *Raniere I*.

**I. Factual Inaccuracies.**

**1.**　<u>Defendants do not have the authority to decide who was or was not a member of the now-defunct NXIVM or DOS, nor to ban them on that basis.</u>

> The SIS Department may determine whether any requested individuals are affiliated with NXIVM, ESP, DOS or any other NXIVM-affiliated organizations, as prohibited by the special conditions of supervised release in the Judgment… If it is dangerous for Plaintiff to have access to particular individuals once released, it is also a security risk to allow Plaintiff to have access to these same individuals while incarcerated.

Doc. 14-2, p.30.

The Judge who sentenced Plaintiff clearly indicated that this restriction applies post-release.  Plaintiff also asserts that no entity called NXIVM, ESP, or DOS exist as

1

relevant to Plaintiff's sentencing.  Defendants - who are not judges – do not have the authority to re-interpret the terms of a sentencing order by an Article III judge. Doc. 14-2, p.5.

**2.** "Nicki Clyne is a former associate of NXIVM who has been banned from communicating with Plaintiff." Doc. 14, p.2.

○ This is a misleading statement. Clyne *was* allowed to visit Plaintiff at *both* the MDC in New York *and* the USP in Tucson long after she was widely known as a celebrity who was formerly associated with NXIVM.  In fact, Ms. Clyne communicated with Plaintiff at USP Tucson from January of 2021 until July 24, 2021, when she was banned *only after* the publicity around Plaintiff's restitution hearing. Doc. 1, p.16.   The suspicious timing of these decisions raises serious questions going to the merits.

○ Additionally, the Inmate Investigative Report (IIR) gets critical facts wrong.  The claim that Brooks' email was "being utilized to contact Nicki Clyne **when inmate Keith Raniere is not able to communicate with her.**" *Raniere I,* Doc. 31-2 at 11. However, Ms. Clyne *was* able and allowed to communicate with Mr. Raniere at that time.

**2.** "Danielle Roberts is a former associate of NXIVM who has been removed from Plaintiff's visiting list due to her extensive involvement with NXIVM."  Doc. 14, p.2.

○ "Dr. Roberts visited Plaintiff regularly from approximately April of 2021 until January of 2022."  Doc. 1, p20.  Just like Nicki Clyne, Dr. Roberts' involvement with NXIVM was well known by the BOP, but she *was allowed to visit with Plaintiff* until shortly after she spoke out in support of Plaintiff's claim of innocence.  Doc. 1, pp.19-20.  Again, the circumstances indicate that Defendants had *impermissible, content-based* reasons for banning Dr. Roberts.

2

3. <u>"Suneel Chakravorty is a former associate of NXIVM who has been banned from communicating with Plaintiff at two institutions for misconduct during Plaintiff's incarceration." Doc. 14, pp.2-3.</u>

- Like Clyne and Roberts, Defendants were aware of Chakravorty's involvement with NXIVM and his status as Power of Attorney long before he was banned. Even *after* he was banned, Defendant Warden approved *two* legal calls with Chakravorty as a paralegal to Plaintiff's attorney Joseph Tully.
- Defendants complain that Plaintiff spoke with Mr. Chakravorty on a call that was recorded by both the BOP and Chakravorty, about their sincerely held belief that corruption was involved in Plaintiff's conviction and that Mr. Chakravorty recorded the conversations for podcasts. Doc. 14, pp. 2-3. There is nothing that prohibits these examples of First Amendment speech.
- Defendants complain about terms such as "at war", and "no holds barred". However, these are obviously metaphors that are frequently used in the context of legal cases. Defendants assert that these words alone are reason enough to ban Mr. Chakravorty. The full context of the conversations, however, shows that these expressions were harmless. Exh. 5, attached.
- Defendants complain that Chakravorty organized people to dance outside the prison, and characterize it as "erotic", however, the dancers were captured on video, and do not show any threat to the safety and security of the prison or the public. Exh. 1, p.1. attached. The dancing included families and friends of other prisoners besides Plaintiff, and, on one occasion, a corrections officer. *Id.*

**4.** <u>Defendants misstate that "The Court flatly rejected Plaintiff's argument: "Plaintiff argues that Mr. Chakravorty 'serves 'precisely this role on behalf of the attorneys of Tully & Weiss'. Doc. 14, p.7</u>

○ The Court *did not* reject Plaintiff's argument, flatly or otherwise.  The Court found,

> While Mr. Chakravorty may have provided assistance to Plaintiff in his legal case, Plaintiff **has not provided any evidence** that Mr. Chakravorty is a paralegal or agent of any kind employed by Plaintiff's attorney(s).

*Raniere I,* Doc. 18, pp.14-15 (emphasis added). Here, Plaintiff attaches the evidence that Mr. Chakravorty *is a paralegal* to Plaintiff's attorney Joseph Tully.  Exh. 2, attached.  Defendant Warden has these credentials and approved two legal calls for Mr. Chakravorty as a paralegal.  Now they claim that Mr. Chakravorty is banned because he was affiliated with NXIVM.  These inconsistencies support Plaintiff's theory that access to supporters and paralegals are being used as retaliation tools.

**5.** <u>"Mr. Chakravorty clearly identified himself as holding Plaintiff's power of attorney, not as a paralegal *working for* Plaintiff's attorneys"  Doc. 14, p.5.</u>

○ There is no reason that he cannot be both.  Plaintiff admits that Mr. Chakravorty's role has "**evolved** into both paralegal for, and manager of the legal team…"  Doc. 1, p.11, ¶61.

**6.** <u>"Between the jury's verdict and the court's sentence, Plaintiff continued regularly contacting people affiliated with NXIVM, including Mr. Chakravorty, and the government so informed the judge."</u>

○ Both sides agree on this statement, and each believes that it supports their contentions.  Defendants have not shown that there was any problem with these communications.

**7.** <u>"the Court held [in *Raniere I*] that "Plaintiff's Motion, as it relates to his access to the courts, fails because Plaintiff has not presented any evidence supporting that his ability to litigate has been hindered by prison officials, and Plaintiff has not alleged an actual injury such as inability to meet a filing deadline or to present a claim.""  Doc. 14, p.8.</u>

4

- ○ Plaintiff's new complaint significantly expands the timeframe, both backwards in time to Plaintiff's first days in the USP Tucson, and forward to the end of last year.  Plaintiff has presented a clear pattern of retaliation for publicity and support for Plaintiff's challenge to his criminal case.  He has now shown injury by having forever forfeited any Rule 33 motions based on newly discovered evidence because the interference with communications by scrubbing Mr. Chakravorty from his call list. He has also been injured by being held in lock-down conditions in the SHU, including being painfully shackled during legal visits and calls with his attorneys. These conditions and the credible appearance of retaliatory animus are sufficient to "chill a person of ordinary firmness…"

> In this context, and at the pleading stage, we have *never* required a litigant, *per impossibile,* to demonstrate a *total* chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim. Speech can be chilled even when not completely silenced. In *Mendocino Environmental Center v. Mendocino County,* we pointed out that the proper First Amendment inquiry asks "**whether an official's acts would chill *or* silence a person of ordinary firmness from future First Amendment activities.**" 192 F.3d 1283, 1300 (9th Cir.1999) (emphasis added), (quoting *Crawford-El v. Britton,* 93 F.3d 813, 826 (D.C.Cir.1996), *vacated on other grounds,* 520 U.S. 1273, 117 S.Ct. 2451, 138 L.Ed.2d 210 (1997) (internal quotation marks and citation omitted)). Because "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity," Rhodes does not have to demonstrate that his speech was "actually inhibited or suppressed."

*Rhodes v. Robinson*, 408 F. 3D 559, 569 (9th Cir. 2005) (bold emphasis added).

**8.** "On July 26, 2022, Plaintiff was involved in a physical altercation"  Doc. 14, p.10.

- ○ This appears to be an intentional mischaracterization of what we now know occurred.

5

Plaintiff was the *victim of an assault*. This fact was known by Defendants within days of the incident, yet Plaintiff is *still* in the SHU and subject to lock-down conditions long after his assailant was transferred.[1]

9. "Plaintiff has introduced no evidence that he expressed concerns about his current housing status or cellmate during any of the SRO reviews, through cop-outs or through the Administrative Remedy Program."

  ◦ Attached are Plaintiff's administrative grievances about his concerns. Ex. 3 Plaintiff's previous lawsuit also introduced these claims. *See*, *Raniere I,* Docs. 43-1, 44.

  ◦ Attached are Plaintiff's recent declarations filed in Toni's Fly's case. Ex. 6.

10. "There are no safety or security concerns with Plaintiff's current housing assignment" Doc. 14, pp. 10-11.

  ◦ This is presented with no support, only the word of SSI Ulrich, a Defendant.

11. "The docket in Plaintiff's criminal case belies his claim that he is being denied access to the court. Plaintiff's criminal attorneys filed a Rule 33 motion, and Plaintiff filed one as well."

  ◦ *See Rhodes v. Robinson, supra.* It is not only the fact that Plaintiff's opportunity to fully develop all his claims under Rule 33 was interfered with, but also the fact of the *timing* of this interference, as well as other acts of apparent retaliation that, combined, would "chill… a person of ordinary firmness from future First Amendment activities."

12. "The Supreme Court approved a similar regulation in *Pell v. Procunier*, 417 U.S. 817, 827 (1974), because "[i]n the judgment of the state corrections officials, this visitation policy will permit inmates to have personal contact with those persons who will aid in their rehabilitation, while keeping visitations at a manageable level that will not compromise institutional security. Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial

---

[1] The BOP inmate locator shows Maurice Adonis Withers #10300-090 is at USP Terre Haute. https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results

6

evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Doc. 14, p.12, fn.12.

- *Pell* also says "legitimate policy objectives of the corrections system itself, require that some limitation be placed on such visitations. **So long as reasonable and effective means of communication remain open and no discrimination in terms of content is involved**,... 'prison officials must be accorded latitude.'" *Pell,* 417 U.S. at 826. (emphasis added). Here, visits and calls are sporadic, and there is evidence of content-based discrimination: anyone who supports Plaintiff's challenges to his conviction is banned.

**13.** "Constitutionality of SHU Placement"  Doc. 14, pp.16-17.

- Defendants try to shape Plaintiff's claims for him by discussing his placement in the SHU as a 5th Amendment due-process, liberty interest.  However, Plaintiff's claims fall under First Amendment retaliation and Sixth Amendment interference with counsel. Doc. 1.  Even if he were pleading a 5th Amendment claim, SHU placement here is significantly different from general population, and is identical to SHU placement for disciplinary reasons, constituting atypical and significant deprivation required.

**14.** Defendants claim that the Motion is outside the scope of the Complaint. This is untrue. Below are Defendants' characterizations compared to Plaintiff's Claims:

- Plaintiff receive all legal calls and visits with attorneys that are requested by the attorney; Doc. 14, p.21.
  - Count I: Under this Count, Plaintiff seeks reasonable access to communicate with his attorneys and their agents, both in person and using contemporaneous telephonic methods, subject only to modest limitations that have a reasonable relationship to

7

legitimate penological interests.

○ Defendants recognize Plaintiff's *power-of-attorney*, Suneel Chakravorty, a non-attorney, as a legal professional for the purposes of communicating confidentially with Plaintiff;

▪ <u>Count II</u>: On information and belief, Plaintiff's right to communicate with Mr. Chakravorty was denied as retaliation for exercising his First Amendment rights.

○ Defendants release Plaintiff from SHU and return him to his original unit or provide him a single cell in the SHU;

▪ <u>Count I</u>: As described above, Defendants, in a non-frivolous manner, have a pattern and practice of frustrating and interfering with Plaintiff's First Amendment right to communicate with his attorneys. By doing so, Defendants frustrated and interfered with Plaintiff's First Amendment right of access to the courts.

**15.** <u>Defendants complain that the requested relief is not "modest" (Doc. 14, p.21).</u> However,
  ○ Prisoners have the right to litigate without active interference,... a guarantee that exists so prisoners have a viable mechanism to remedy prison injustices. The heart of the anti-interference right is the presentation of constitutional, civil rights and habeas corpus claims. But, by virtue of their broader right to petition the government for a redress of their grievances under the First Amendment, prisoners must also have opportunities to pursue certain other types of civil litigation.

*Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013) (internal citations omitted).

  ○ The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts. Because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those

> protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield.

*Johnson v. Ryan* (9th Cir. 2022) (internal citations omitted).

**16.** <u>Defendants claim that Jorge De La Garza was banned because he has not shown that he is an attorney in good standing.</u>

Attached is evidence of Mr. De La Garza's legal credentials, which Defendants already have. The reason Defendants previously gave to Mr. De La Garza for the ban was that he was a security threat to the institution. Ex. 4, p.8.

**17.** <u>Defendants complain about Plaintiff's reliance on *United States v. Rowe*, 96 F.3d 1294 (9th Cir. 1996), and *Jenkins*, 487 F.3d at 491.</u>

- Even if Chakravorty were not a paralegal, he still is covered under the privilege:

    - The attorney-client privilege protects communications made in confidence by a client to his attorney in the attorney's professional capacity for the purpose of obtaining legal advice. Because the privilege is in derogation of the search for the truth, it is construed narrowly. Thus, ordinarily, statements made by a client to his attorney in the presence of a third person do not fall within the privilege, even when the client wishes the communication to remain confidential, because the presence of the third person is normally unnecessary for the communication between the client and his attorney. However, there is an exception to the general rule that the presence of a third party will defeat a claim of privilege when that third party is present to assist the attorney in rendering legal services. Ms. Jenkins recognizes this exception, but insists that it is limited to those individuals who would be considered agents of the attorney under the law of master and servant. **Nothing in our case law so limits the exception. This exception applies both to agents of the attorney, such as paralegals**, **investigators**, **secretaries and members of the office staff** responsible for transmitting messages between the attorney and client, and to outside experts engaged "to assist the attorney in providing legal services to the client," such as accountants, interpreters or polygraph examiners.

*Jenkins v. Bartlett*, 487 F.3d 482, 490-91 (7th Cir. 2007) (internal citations omitted) (bold emphasis added).

**18.** <u>"Plaintiff has not shown that the Bureau has deliberately interfered with the confidential relationship between him and his counsel or chilled his right to privately confer with counsel. *See Nordstrom*, 762 F.3d at 910. He cannot do so because the evidence shows that the Bureau has facilitated his numerous confidential legal calls and frequent legal visits with his counsel." Doc. 14, p.24.</u>

◦ The BOP is not authorized to decide what counts as *enough* communication with Plaintiff's attorneys. The raw number does not reflect the amount of work that was done, or that needed to be done, on the calls and visits.

**19.** <u>"Plaintiff has introduced no evidence at all, instead relying upon the allegations in his Complaint, many of which are based "on information and belief."" Doc. 14, p.24.</u>

◦ At the pleading stage, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-6 (2007).

**20.** <u>"Plaintiff has not shown irreparable harm. A plaintiff "must demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chron. Publ'g Co.,* 762 F.2d 1374, 1376 (9th Cir. 1985).</u>

◦ The harm has already been done in part. Plaintiff's opportunity to file Rule 33's is over. The delays between calls and visits means delays in court, and therefore delays in relief. What Defendants characterize as violations of the prison rules, is actually Plaintiff exercising his 1st Amendment rights to challenge his conviction. Plaintiff's ability and willingness to speak out are significantly chilled when, each time he or his supporters speak out in support of Plaintiff, they are banned from speaking with him, and he is thrown in the SHU.

21. "Plaintiff erroneously stated that an Arizona District Court found that "a prisoner who suffered a First Amendment violation enjoys a presumption of irreparable harm." (Doc. 3 at 11.)"

- ○ "In the context of a First Amendment free speech claim, the Supreme Court stated, "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The loss of an ability to practice a central tenet of one's religion for any extended amount of time is clearly an irreparable injury."

*Luckette v. Lewis*, 883 F.Supp. 471 (D. Ariz. 1995)

## II. CONCLUSION

Cleared of the inaccuracies in Defendants' Opposition, the facts show that Plaintiff is **likely to prevail** on his First and Sixth Amendment claims for interference with access to the courts and counsel as well as other forms of retaliation for challenging his conviction. The law tells us that these constitutional rights are fundamental. Therefore, any interference **presumptively constitutes irreparable harm**. *Not interfering* is the bare minimum, and can be **no hardship** on Defendants.

DATED this 23rd day of February, 2023 by

/s/Stacy Scheff
STACY SCHEFF
Attorney for Plaintiff

Delivered via ECF
to all registered parties

11