EXHIBIT 5

## DECLARATION OF SUNEEL CHAKRAVORTY

1. Since early 2020, I have been collaborating with Mr. Raniere to uncover potential evidence that bad actors in the FBI and DOJ committed malfeasance to secure his conviction.

2. One of the most egregious issues we suspected is the manipulation and falsification of evidence to convict him of the racketeering predicate acts of child pornography and sexual exploitation of a minor.

3. After two years of effort, on April 28, 2022, Mr. Raniere submitted to the appellate court three affidavits from leading forensic experts, including Dr. James Richard Kiper, Ph.D., a former Special Agent and forensic examiner who had worked for the FBI for twenty years until 2019.

4. These affidavits contained the experts' findings of manipulation of child pornography evidence, some of which was shown to have occurred while in the custody of the FBI. US v. Raniere, Eastern District of New York, 18-cr-204, Doc. 1169-1.

5. On that same day, AUSA Kevin Trowel, of the Eastern District of New York, called this evidence of government malfeasance "frivolous." US v. Raniere, United States Court of Appeals for the Second Circuit, 20-3520, Doc. 205.

6. On April 30, 2022, Mr. Raniere called me, and in conversation he used the word "war."

7. In their filings in *Raniere v. Garland*, 22-cv-561, the BOP seems to have misconstrued or possibly conflated Mr. Raniere's use of the word "war" as if it were used in a manner other than as part of the "attack" on his conviction or a "fight" for justice.

8. In their response to Mr. Raniere's motion for preliminary injunction, Doc. 14, the BOP wrote:

   > In early May 2022, the SIS Department at USP Tucson was monitoring telephone calls between Plaintiff and Mr. Chakravorty. (Ex. F, p. 4.) They spoke to each other about being "at war" with the federal government that would be "no holds barred." (Id.)... The CTU recommended that the USP Tucson SIS Department remove all of Plaintiff's current contacts and review all future contact requests. (Doc. 14 at 6:7-14.)

9. They cited the affidavit of SIS Lieutenant Anthony Gallion, dated, May 31, 2022, in Exhibit F. In his affidavit, Lt. Gallion wrote:

1

>In early May 2022, my staff in the SIS Department were monitoring telephone calls between Raniere and Suneel Chakravorty. They spoke to each other about being "at war" with the federal government that would be "no holds barred." Even more concerning than this language or "war" is the fact that Raniere asked about the quality of the recordings and stated that he has many recordings. As indicated above, Suneel Chakravorty has previously recorded telephone conversations with Raniere. The CTU recommended that Raniere's current contacts be removed and that all future contact requests go through the SIS Department for approval so as to determine whether any individuals have affiliation with NXIVM, as prohibited by special conditions of supervised release in the Judgment and Commitment Order. See Att. 6, Judgment and Commitment Order at 9 (special condition number eleven). Doc. 14-2 at 279 ¶14.

10. It is true that I recorded my phone calls with Mr. Raniere, as Lt. Gallion states. Mr. Raniere was aware that I was recording the conversation just as he was aware the BOP was recording the conversation. To my knowledge there is no prohibition against recording conversations with a federal prisoner.

11. My calls with Mr. Raniere centered around uncovering evidence that bad actors within the Federal Bureau of Investigation and potentially the US Attorney's Office for the Eastern District of New York had violated Mr. Raniere's rights and, in doing so, committed criminal acts, potentially requiring an independent investigation separate and apart from Mr. Raniere's efforts to attack his conviction.

12. Lt. Gallion's affidavit, in which Mr. Raniere was quoted, stated Mr. Raniere was "at war" and as such it was a "no holds barred" engagement.

13. On April 30, 2022, Mr. Raniere used the word "war" not once but three times in calls to me. The BOP has the recordings. I offer relevant excerpts, transcribed by the service Rev.com.

14. The excerpt of the first instance is below (emphasis added):

> Mr. Raniere: ***We're in a war here, and we're fighting for justice***….

15. The excerpt of the second instance is below (emphasis added):

> Let's not be light-languaged or anything like that…. ***It's interesting at the end of JFK, the movie, where he looks up and says, in effect, give us get our government back.*** It's up to you…
>
> ***But really we want our government back and this is the war.***

2

16. The third instance is centered around Mr. Raniere discomfiture over a response from an individual who represents the Department of Justice that did not address the numerous findings of alterations and manipulation of evidence in FBI custody, made under oath by three qualified forensic experts in his appellate submission but rather was dismissed with a single word: "frivolous." Mr. Raniere believed this was at least disingenuous if not a wholesale abrogation of the right to another word, the very centerpiece of the name of their institution: "Justice."

17. Credible evidence of potential violations of law and due process by government actors, to Mr. Raniere's mind, and to my mind also, and perhaps to most Americans' minds, would inspire a prosecutor to urgent action, not dismissive rhetoric. Mr. Raniere believed that such a response from Mr. Trowel was not in keeping with a prosecutor's role, which Mr. Raniere believes is not to win convictions but to ensure justice. As such, in his view, this kind of dismissive conduct should result in dismissal or censure.

18. The excerpt containing the third instance is below (emphasis added):

    Mr. Raniere: It's not frivolous. And to think this is frivolous is a horrible sin, is a horrible evil. Has to be taken out of the gov. They have to resign.

    Mr. Chakravorty: Yes.

    Mr. Raniere: Does that make sense?

    Mr. Chakravorty: Yes, it does.

    Mr. Raniere: And we need to ask for it publicly. So I'll speak to you, I'll try not to have too much more. Okay?

    Mr. Chakravorty: Thank you. Okay.

    Mr. Raniere: Yeah. We have 10 seconds last five seconds, so, all right, *send my best to everyone and I'm so sorry, but we're in the war now.*

    Mr. Chakravorty: Yes we are.

    Mr. Raniere: *No holds barred.*

19. In those conversations, I understood Mr. Raniere and myself to be talking about a fight for justice and for truth, not only to attack Mr. Raniere's conviction but to weed out

     corruption if we find it, even inside our most powerful, or venerable or vaunted institutions.

20. The use of the word "war" had nothing to do with taking up arms against the government or anyone, or anything else other than to fight for the goals of our government as expressed in the Constitution, using the legal system and the public forum to expose violations committed under the color of law by bad actors in sheep's clothing.

21. To ring an alarm bell over the use of a word "war" without providing the context is not entirely dissimilar to the use of the word "frivolous" by another government representative, for both are misleading. Under other circumstances, it might be a humorous way to win by misdirection, but in the case of a prisoner of the USA who has raised the most serious allegations that every American should have cause to be concerned about, it is not comical. People often use the language of war without the slightest possibility that they are speaking literally:
    - Being "in the trenches" does not mean one is in trench warfare, but means being deeply involved in a hands-on, ground-level work on a project.
    - Going "nuclear" does not mean detonating an atomic bomb but rather that a person is acting in a volatile manner or on a full-scale attack but necessarily violent and not with thermal heat.
    - "Pulling the trigger" does not literally mean shooting an actual gun but rather making a decision.
    - Being in a battle or a fight or a war does not mean a literal combat with lives at stake, but rather a quest for victory against an adversary.

22. On May 3, 2022, Mr. Raniere filed the Rule 33. US v. Raniere, 18-cr-204, Doc. 1169.

23. On May 5, 2022, in part because of the 'language of war' from the calls on April 30, 2022, which Lt. Gallion inferred to have an alarming meaning, I was scrubbed from Mr. Raniere's list. Mr. Raniere has not been able to call me since that time.

24. One and half months later, on June 17, 2022, USP Tucson recognized me as a paralegal for Mr. Joseph Tully Esq. and the Warden permitted me two legal calls with Mr. Raniere. One was on June 19, 2022, and the other was on June 20, 2022, just one day before Mr. Raniere's Rule 33 final submission deadline of June 21, 2022.

25. Mr. Raniere, with my help, filed an additional Rule 33 motion, by the deadline, on June 21, 2022. US v. Raniere, 18-cr-204, Doc. 1178.
26. Since then, the Warden has not approved any further requests for legal calls between Mr. Raniere and me.
27. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on February 24, 2023

_____

Suneel Chakravorty