GARY M. RESTAINO
United States Attorney
District of Arizona
DENISE ANN FAULK
Assistant U.S. Attorney
Arizona State Bar No. 12700
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Email: denise.faulk@usdoj.gov
Attorneys for the Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Raniere,<br><br>  Plaintiff,<br><br>  vs.<br><br>Merrick Garland, et al.,<br><br>  Defendants. | CV 22-00561-TUC-RCC<br><br>**DEFENDANTS' MOTION<br>FOR SUMMARY JUGMENT<br>ON EXHAUSTION** |

Defendants Garland, Peters, Gutierrez and Ulrich, acting in their official capacities by and through undersigned counsel, hereby move for summary judgment on Plaintiff's Complaint based on Plaintiff's failure to exhaust administrative remedies before filing suit as the Prison Litigation Reform Act (PLRA) requires. This motion is based on the following memorandum of points and authorities, the separately filed statement of facts and exhibit and all matters of record.

**Memorandum of Points and Authorities**

**I.      Background for Motion for Summary Judgment**

    **A.      Plaintiff**

Plaintiff Keith Raniere is a federal inmate at the United States Penitentiary (USP Tucson) in Tucson, Arizona. (Statement of Facts (SOF) 1.) Plaintiff is serving an aggregate sentence of 120-years for racketeering conspiracy, racketeering, forced labor conspiracy, wire fraud conspiracy, sex trafficking conspiracy, sex trafficking of Jane Doe 5

and attempted sex trafficking of Jane Doe 8.  (SOF 2.)  He is projected to be released from custody on June 27, 2120.  (SOF 3.)

### B. Complaint and Motion for Preliminary Injunction

On December 16, 2022, Plaintiff filed the Complaint alleging that the Bureau is interfering with his First and Sixth Amendment rights and a motion for preliminary injunction. (Docs. 1, 3.)  Specifically, Plaintiff alleges that "[o]n May 4, 2022, Plaintiff was on a privileged legal call with attorney Tully, when the call was apparently terminated prematurely, and without warning."  (Doc. 1 at 23.)  Plaintiff alleges that on May 6, 2022, "Defendants interfered and frustrated that legal call by, among other things, causing the phone call to be cut off before Plaintiff and [attorney] Dougherty had concluded their conversation."  (*Id.* at 24.)

Plaintiff also alleges that his communications with Suneel Chakravorty, who holds his power of attorney, Nicole Clyne, "a close personal friend," former doctor Danielle Roberts, who "supervised the ceremony for some of the women in DOS where they had their skin cauterized or branded with a symbol," and Jorge De La Garza, Plaintiff's Mexican attorney, were banned for retaliatory reasons "on information and belief."  (Doc. 1.)

Plaintiff alleges that he was assaulted and placed in the Special Housing Unit (SHU) at USP Tucson.  (*Id.* at 26.)  Plaintiff alleges, again on information and belief, that his cellmate in the SHU was chosen "as a way to harm him indirectly, because Mr. Raniere is convicted of child sex offenses." (*Id.* at 27.)

In Count 1, Plaintiff asserts "Unlawful Frustration and Interference with First Amendment Access to the Courts." (*Id.* at 32.)  He asserts "[t]he First Amendment right of access to the courts includes with it a reasonable opportunity to communicate in a contemporaneous manner *with his lawyers*." (*Id.* (Emphasis added.))

In Count II, Plaintiff asserts "Retaliation Based on Rights Protected Under the First Amendment." (*Id.* at 33.)  He asserts the right protects persons "to have meaningful access to the Court, . . . [and] to express themselves and advocate for themselves without fear of

retaliation." (*Id.*)  He asserts that this right to communicate with Mr. Chakravorty, Ms. Clyne and Ms. Roberts under the First Amendment was denied "on information and belief" as retaliation for exercising his First Amendment rights. (*Id.* at 34.)

In Count III, Plaintiff asserts "Sixth Amendment Interference With Representation By Counsel." (*Id.* at 35.)  He asserts, "[o]n information and belief, Defendants do not intend to give Plaintiff enough contact with his attorneys to meet his legal needs." (*Id.* at 35.)

In his Complaint, Plaintiff seeks a preliminary injunction "to preserve the status quo." (*Id.* at 36.)  He also seeks a declaration that "[t]his court retains equitable powers to issue injunctions intended to maintain the status quo *pending administrative exhaustion*, regardless of the requirements imposed by 42 U.S.C. 1997e." (*Id.* at 37 (Emphasis added.).)

In his separately filed motion for preliminary injunction, Plaintiff sought four injunctions:

1. Plaintiff receive all legal calls and visits with attorneys that are requested by the Attorney;
2. Plaintiff's power-of-attorney, Suneel Chakravorty be recognized as a legal professional for the purposes of communicating confidentially with Plaintiff;
3. Plaintiff be released from SHU and returned to his original unit, or, if Plaintiff has to stay in the SHU, that he get a single cell for safety; and
4. Plaintiff not be transferred to another prison.

(Doc. 3 at 12-13.)  On April 28, 2023, this Court denied Plaintiff's motion because he "fails to produce evidence to show a likelihood of success on the merits of his claims or that he faces a likelihood of irreparable harm absent preliminary injunctive relief." (Doc. 34 at 19.)

**C.    Bureau's Administrative Remedy Program**

The Bureau's Administrative Remedy Program is designed to allow an inmate to seek formal review of an issue relating to any aspect of his confinement. 28 C.F.R. § 542.10(a).  The program contains four levels of review.  Initially, an inmate is required to attempt to informally resolve his grievance with Unit Team staff. 28 C.F.R. § 542.13(a).  If the inmate is unable to resolve the grievance informally, he may submit an

Administrative Remedy Request to the Warden using the BP-9 Form. 28 C.F.R. §§ 542.13(a), 542.14. The inmate must place a single complaint or a reasonable number of closely related issues on the form, or the form will be rejected and returned without a response. 28 C.F.R. § 542.14(c)(2). If the inmate is not satisfied with the Warden's response, he may submit an Appeal on the BP-10 Form to the Regional Director within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15. When appealing sensitive issues, the inmate may submit an appeal (BP-10) directly to the Regional Director. 28 C.F.R. § 542.14(d)(1). If the inmate is not satisfied with the Regional Director's response, he may submit an Appeal on the BP-11 Form to the General Counsel within 30 days of the date the Regional Director signed the response. *Id.* The appeal to the General Counsel is the final level of administrative review. *Id.* An inmate, therefore, has not administratively exhausted his claim until he has filed a BP-11 with the General Counsel and (1) the General Counsel has responded on the merits to the inmate's BP-11 or (2) the General Counsel has failed to respond within the time allotted. 28 C.F.R. § 542.18. (SOF 6.) Only after this procedure is completely exhausted is a prisoner authorized to file suit in district court. 42 U.S.C. § 1997e(a). (SOF 7.)

The Administrative Remedy Program Statement regarding the administrative remedy procedures is available to USP Tucson inmates in the main law library and in the Electronic Law Library in SHU. (SOF 10.) Additionally, when an inmate arrives at USP Tucson, he participates in an Admission and Orientation (A&O) Program, during which he is given instructions on the Administrative Remedy Program, how to obtain and submit the appropriate forms and how to exhaust claims through all levels of the Administrative Remedy Program. (SOF 11.) He also is given a copy of the A&O Handbook, which includes information on the Administrative Remedy Program. (*Id.*)

An inmate may obtain the administrative remedy or appeal forms from, and submit completed forms to, any Unit Team member. (SOF 12.) The Unit Team is comprised of the Unit Manager, Case Manager, Correctional Counselor and Unit Secretary. (*Id.*)

Inmates may utilize an Inmate Request to Staff Member (form BP-S148),

commonly called a Cop-Out, to make any written request, including that he believes that his Unit Team is not providing him with administrative remedy forms or is not properly processing administrative remedy forms. (SOF 13.) He can make the requests to any staff member, including Associate Wardens and the Warden. (*Id.*) An inmate may file an inmate request to staff (cop-out), informal grievance (BP-8), or formal grievance (BP-9, BP-10, or BP-11) while in general population or while housed in the SHU. *See* 28 C.F.R. § 541.31(o) ("You can submit a formal grievance challenging any aspect of your confinement in the SHU through the Administrative Remedy Program[.]"). (*Id.*)

### D.  Plaintiff's Administrative Remedies

During Plaintiff's incarceration with the Bureau, he has filed twenty administrative remedy appeals. (SOF 16.) Only four appeals were to the Office of General Counsel. (SOF 37.) Of those, one pertained to his appeal of disciplinary sanctions imposed on October 26, 2021, and is unrelated to the causes of action in this litigation.[1] (*Id.*) The others were rejected for procedural reasons, and Plaintiff has not re-filed or cured those filing deficiencies. (*Id.*) To date, Plaintiff has not exhausted a single administrative remedy regarding any of the issues in his Complaint. (SOF 38.) His unexhausted administrative remedies include:

> Plaintiff requested to be returned to general population in remedies filed at the local and regional levels. (SOF 17, 35.) However, both remedies were rejected because he failed to show an attempt at informal resolution. (*Id.*) He has not filed an appeal to the Office of General Counsel as to that issue. (*Id.*)
>
> Plaintiff requested to be unrestrained during legal visits in remedies filed at the local and regional levels. (SOF 18, 33.) The regional appeal was rejected because he again failed to show an attempt at informal resolution. (SOF 33.) He has not filed an appeal to the Office of General Counsel as to that issue. (SOF 18, 33.)
>
> Plaintiff requested visitation denial information in remedies filed at the local

---

[1] In the remedy Plaintiff asks, "Please expunge these shots and make this situation right." (SOF 19.)

and regional levels. (SOF 21, 29.) He has not filed an appeal to the Office of General Counsel as to that issue. (*Id.*)

Plaintiff requested information about the denial of a paralegal on his approved list in remedies filed at the local and regional levels. (SOF 22, 28.) He appealed to the Office of General Counsel, but his appeal was rejected because he did not provide a copy of his BP-9 and his BP-10. (SOF 32.) He was instructed to re-submit his appeal in proper form within fifteen days from receipt of the rejection notice, but he has not done so. (*Id.*)

Plaintiff complained about the loss of his contacts in TRULINCS, an inmate computer system, in remedies filed at the local and regional levels. (SOF 23, 34.) The regional appeal is pending with a response date of May 29, 2023. (SOF 34.) Having not yet received a response to his regional appeal, Plaintiff has not yet filed an appeal to the Office of General Counsel. (*Id.*)

Plaintiff complained about being restrained in the SHU for legal visits and legal calls in a remedy filed at the local level. (SOF 24.) He has not appealed to the region or to the Office of General Counsel. (*Id.*)

Plaintiff requested information in a remedy filed at the local level that was rejected because he is limited to one request per BP-9 submission. (SOF 25.) He has not appealed to the region or to the Office of General Counsel. (*Id.*)

Plaintiff requested information regarding visitors removed from his visiting list in a remedy filed at the local level that was rejected because he is limited to one request per BP-9 submission. (SOF 26.) He has not appealed to the region. (*Id.*) He filed two appeals to the Office of General Counsel, which were rejected because he is limited to one request per BP-9 submission. (SOF 30, 31.)

Plaintiff requested to be treated like a general population inmate during legal visits in a remedy filed at the local level that was rejected because he failed to state the basis for his request. (SOF 27.) He has not appealed to the region or to the Office of General Counsel. (*Id.*)

Plaintiff filed each of his BP-9's at the local level prior to filing the Complaint. (SOF 17-18, 21-27.) The only BP-10 and BP-11 Plaintiff filed before filing the Complaint concerned his appeal of disciplinary sanctions. (SOF 19-20.) Plaintiff filed the remaining BP-10's and BP-11's *after* filing the Complaint. (SOF 28-36.)

**III.   The Court should grant Summary Judgment because Plaintiff failed to exhaust his administrative remedies prior to filing suit.**

**A.   Legal Standard for Motion for Summary Judgment**

A motion for summary judgment filed before an Answer is unusual but permitted. *Johnson-Bey v. Tolbert*, No. CV-13-00578-PHX-ROS, 2013 WL 11311731, at *1 n.1 (D. Ariz. July 29, 2013) ("[a] defending party is not required by [Rule 56] to file an answer before moving for summary judgment") (citing Charles Alan Wright, et al., *Federal Practice and Procedure* § 2718 (3d ed.); *Harris v. McGrath*, No. CV-14-02453-TUC-CRP, 2016 WL 11652877, at *1 (D. Ariz. June 21, 2016) (same). Like a motion to dismiss for failure to state a claim, the motion for summary judgment tolls the time for answering the complaint. *Parker v. Dep't of Justice,* 214 F.Supp.3d 79, 85 (D.D.C. 2009)*; see also, Jones v. Dep't of Justice,* 601 F.Supp.2d 297, 302 (D.D.C. 2009) (noting that filing a motion for summary judgment "is substantively no different than filing a motion under Rule 12(b)(6) accompanied by matters outside the pleadings, which is then converted by operation of Rule 12(b) to one under Rule 56."); *Gifford v. Travelers Protective Ass'n of Am.*, 153 F.2d 209, 210-11 (9th Cir. 1946) (granting summary judgment before answer filed).

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The nonmovant need not establish a material issue of fact conclusively in its favor. *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968). However, he must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal citation omitted, emphasis in original). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

Additionally, if "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. In deciding the motion, the Court must consider whether Plaintiff's claims are supported by plausible *factual* statements or by conclusory allegations or directly contradicted by the record. *Soremekun*, 509 F.3d at 984; *Scott*, 550 U.S. at 380.

**B.     Prisoners are required to exhaust administrative remedies.**

The PLRA provides that no prisoner shall bring an action "with respect to prison conditions" under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001). Federal prisoners suing must first exhaust inmate grievance procedures. *Porter*, 534 U.S. at 524.

Exhaustion is a prerequisite to suit and all "available" remedies must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Id.*

Administrative exhaustion protects an administrative agency's authority, discouraging disregard of its procedures and permitting it to correct its own errors. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Administrative exhaustion also promotes efficiency by permitting matters to be handled administratively, where a resolution often can be reached more quickly than in the courts. *Id.* Additionally, administrative exhaustion promotes judicial economy by "reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

The inmate must complete the administrative review process in accordance with the applicable rules. *See Woodford*, 548 U.S. at 94. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Proper exhaustion under § 1997e(a) requires following "all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (citations and internal quotation marks omitted) (emphasis in original). To properly exhaust, an inmate must comply with the grievance procedures, rules and deadlines of the institution where he is incarcerated. *Jones*, 549 U.S. at 218.

An inmate must fully exhaust all administrative remedies before the complaint is actually filed. *McKinney v. Carey*, 311 F.3d 1198, 1199-200 (9th Cir. 2002).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (*quoting Booth,* 532 U.S. at 739). Exhaustion is now mandatory, and there is no discretion to excuse it. *Id.*

"Exhaustion should be decided, if feasible, before reaching the merits of a

prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). Failure to exhaust should be raised in a motion for summary judgment: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166.

The defendant has the burden to show that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. Once the defendant has met this burden, the burden shifts to the plaintiff to demonstrate "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

### C. Plaintiff failed to exhaust administrative remedies before filing the Complaint.

Here, Plaintiff admitted in his Complaint that he had not exhausted administrative remedies and even sought a declaration that the Court could issue an injunction "pending administrative exhaustion, regardless of the requirements imposed by 42 U.S.C. 1997e." (Doc. 1 at 37.) Clearly, he knows about the administrative remedy process: he completed the process as to his request to expunge a disciplinary sanction. (SOF 19-20.) Altogether, he initiated twenty administrative remedies – about unrelated issues and issues in this case. (SOF 16-36.) However, he failed to exhaust the administrative remedy process as to any of the issues in the Complaint before filing the Complaint. (SOF 37-38.) In fact, he filed the Complaint before getting past the first level of administrative remedies about any of the issues in the Complaint. (SOF 17-18, 21-36.)

On January 21, 2021, Plaintiff was given an Inmate Admission & Orientation (A&O) Handbook,[2] which describes the administrative remedy process. (SOF 4.) The A&O Handbook provides detailed information on how inmates may obtain administrative remedy forms, including that inmates may obtain forms from their Correctional Counselor or any Unit Team member.[3] (SOF 8.)

---

[2] Plaintiff acknowledged receipt of the A&O Handbook on January 21, 2021. (SOF 4.)

[3] The Unit Team is comprised of the Unit Manager, Case Manager, Correctional Counselor and Unit Secretary. (SOF 11.)

As detailed above, the record clearly shows that Plaintiff did not appeal properly an administrative remedy regarding any of the issues in the Complaint to the highest level before filing suit, choosing instead to skip the process and file suit.  Many of Plaintiff's remedies and appeals have been rejected due to his refusal to follow the rules, and he has failed to follow the instructions to cure any of the rejections.  Under Bureau regulations, no administrative remedy is fully exhausted until the inmate has submitted a proper BP-11 to the Central Office and received a response or the time to respond has expired.  (SOF 6-7.)  Plaintiff failed to complete the administrative review process in accordance with the applicable rules.  *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 94.  He did not comply with the "agency's deadlines and other critical procedural rules."  *See id.* at 90.  Thus, he did not properly follow the steps, "so that the agency [could] address[] the issues on the merits."  *See id*. (citations and internal quotation marks omitted).  Plaintiff failed to exhaust administrative remedies before filing the Complaint.  Accordingly, judgment should be granted for Defendants on the Complaint.

**IV.    Conclusion**

Plaintiff failed to comply with the PLRA's requirement that he exhaust available administrative remedies before filing the Complaint.  The Court should grant summary judgment for all Defendants for Plaintiff's failure to exhaust administrative remedies.  Based on the foregoing, Defendants respectfully request that this Court grant summary judgment on the Complaint as to all Defendants for Plaintiff's failure to exhaust administrative remedies.

RESPECTFULLY SUBMITTED:  May 1, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Denise Ann Faulk*
DENISE ANN FAULK
Assistant U.S. Attorney

Copy of the foregoing served via CM/ECF to
Stacy Scheff
Attorney for Plaintiff

*s/ P. Vavra*
/ MSJ – Exhaustion