Stacy Scheff
LAW OFFICE OF STACY SCHEFF
P.O. Box 40611, Tucson, AZ 85717-0611
(520) 471-8333 • FAX (520) 300-8033
stacy@ScheffLaw.com
State Bar No. 028364
*Counsel for Plaintiff*

# DISTRICT COURT FOR THE UNITED STATES
# DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Raniere,<br><br>　　　　Plaintiff,<br>v.<br><br>Merrick Garland, *et. al.*<br><br>　　　　Defendants | Case No.: 4:22-cv-00561-RCC-PSOT<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION LIMITED DISCOVERY REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES** |

Plaintiff, via counsel, replies in support of his Motion for Limited Discovery Regarding Exhaustion of Administrative Remedies.  Doc. 38.

Defendants assert that Plaintiff did not explain what limited discovery would reveal and how those facts would preclude summary judgment.  Doc. 41, p.4.  Defendants complain that no affidavits or declarations supported the Motion for Limited Discovery as required under F.R.Civ.P. 56 (Summary Judgment).  *Id.*

However, Defendants are confusing the rules for opposing summary judgment with the Motion for Limited Discovery.  Plaintiff need not submit affidavits in support of a motion for limited discovery.  The purpose of the limited discovery is to obtain evidence needed to oppose summary judgment, including affidavits.  Further, Plaintiff has already submitted affidavits showing that he has been denied access to the grievance procedures, therefore satisfying Defendants' requirement.  *Raniere I,* 4:22-cv-212-RCC, Doc. 29, pp.14-16 (Attached again here as Exhibit 1.)

1

Defendants must first show that there is an available grievance program, then "the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile" *Albino v. Baca*, 747 F. 3d 1162 (9th Cir. 2014)

> Plaintiff has asked that the court allow limited discovery on the exhaustion issue. Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later — if it becomes necessary — discovery directed to the merits of the suit.

(*Id*.) Citing *Pavey v Conley* 544 F.3d 742. (7th Cir. 2004).

Plaintiff has many gaps in his knowledge about the availability of the remedies. For example, while it is clear that Mr. Raniere must obtain the correct grievance or appeal form from "a unit team member" it is entirely unclear from the affidavit whether "any" unit manager, counselor or secretary can provide documents, or if they must be obtained from the grievant's particular unit team.

Further, Defendants opine about the function and availability of "cop-outs",

> 11. "An Inmate Request to Staff Member (form BP-S148), commonly called a Cop-Out, is used to make a written request to a staff member. Any type of request can be made with this form[,]" to include if an inmate believes that his Unit Team is not providing him with administrative remedy forms or is not properly processing administrative remedy forms. See Att. 1 at 38. These requests or "cop-outs" can be made to any staff member, including Associate Wardens and the Warden. An inmate may file an inmate request to staff (cop-out), informal grievance (BP-8), or formal grievance (BP-9, BP-10, or BP-11) while in general population or while housed in the SHU. See 28 C.F.R. § 541.31(o) ("You can submit a formal

grievance challenging any aspect of your confinement in the SHU through the Administrative Remedy Program[.]"). (*Id.*)

Plaintiff wonders why staff would make "cop-outs" available when grievance forms were not. Even when Plaintiff was able to obtain the forms, the ability to make copies was not always provided to Plaintiff. But grievances were rejected due to failure to attach a copy. This would make the grievances unavailable under *Ross v. Blake.*

If limited discovery were granted, Plaintiff would ask for the following:

**LOGS**

1. SHU entry, daily or other logs indicating the frequency, or lack thereof, of visits by Mr. Raniere's unit team to the SHU. This would bolster his claim that he was unable to get the appropriate forms either at all or in a timely manner. Mr. Raniere has filed (and attaches here) affidavits indicating that he was unable to timely obtain grievance forms while he was in the SHU.

**POLICY CLARIFICATION**

2. According to §542.14 (2) "The inmate shall place a single complaint or a reasonable number of closely related issues on the form."
   - The application of this rule is unclear and seemingly arbitrarily enforced. Who decides if issues are closely related enough, or what a reasonable number of issues is? It appears from looking at the rejected grievances filed by Defendants that the rule is interpreted to summarily reject any grievance with more than one issue, regardless of their interrelatedness. Plaintiff would seek to

discover the policy that Defendants have propounded instructing staff on how to handle such issues.

**REPORTS AND INVESTIGATIONS**

3. According to CFR §§ 541.11 a(1) each level of the grievance process is supposed to have a person who "[is] responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and **shall:** (1) Establish procedures for receiving, recording, reviewing, investigating and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals) submitted by an inmate*",* and (3) *"*Conduct an investigation into each Request or Appeal*"*
   - Allowing limited discovery would allow Mr. Raniere to pierce the veil of obscurity surrounding the grievance process and let him see what procedures defendants have put in place to make sure the grievance process he is subject to is not a Sisyphean task doomed to failure. Mr. Raniere would seek to discover these people, and their "established procedures" allowing him to acquire records of the investigations performed at each level of the process would show that defendants are operating, as they must, in good faith, and not rejecting grievances for the smallest defect or procedural flaw, real or imagined, without investigating the issues raised.

4. Any reports responsive to Plaintiff's grievances, or generated through the investigatory process.

- Mr. Raniere engaged with the grievance process in good faith, fairness requires an honest look into Defendants' efforts to deal with Mr. Raniere in kind. The responses that Defendants have provided are extremely short and contain no detail as to how to remedy the issues with the grievances and/or appeals. If those reports exist, they would show Defendants good faith efforts in resolving these matters with Mr. Raniere, and they would show that Defendants are following the law.
- On the other hand, the lack of these documents and reports are proof positive that the grievance process is a sham designed to frustrate grievants, making the entire program "unavailable" and thus eliminating the need for Mr. Raniere to have grieved anything. Mr. Raniere is not seeking extraordinary documentation of Defendants heroic efforts to accommodate his every whim; merely the reports written in the ordinary course of business as required by the law.
- Allowing discovery here would also help clear up some confusion Mr. Raniere may have had with the process to obtain forms. See Exhibit A p. 5 (Declaration of legal assistant Lori Mitchell)

> 10. At USP Tucson, to file an administrative remedy or appeal, **an inmate may obtain the appropriate forms from, and submit completed forms to, any Unit Team member**. The Unit Team is comprised of the Unit Manager, Case Manager, Correctional Counselor, and Unit Secretary. See Att. 1 at 3, 38 ("**All Administrative Remedy forms may be obtained from your assigned Correctional Counselor or Unit Team member**.") (emphasis added)

Plaintiff contends that there is an abundance of information that could be obtained through discovery regarding the true availability, adequacy and futility of Defendant's grievance procedure.

DATED this 15th day of June, 2023 by

/s/Stacy Scheff
STACY SCHEFF
Attorney for Plaintiff

Delivered via ECF
to all registered parties

# EXHIBIT 1

# AFFIDAVIT

STATE OF ARIZONA    )
                    ) ss.    Affidavit of Keith Alan Raniere
COUNTY OF PIMA      )

I, Keith Raniere BOP register number 57005-177, pursuant to 28 U.S.C. § 1746, avow under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am currently incarcerated in the United States Bureau of Prisons, at Tucson, AZ.

2. I am currently challenging my criminal convictions through the courts and the media.

3. I am the Plaintiff in this action against the Untied States Department of Justice and the Federal Bureau of Prisons for various violations of my civil rights.

4. I am being retaliated against by prison staff as a result of that lawsuit, and my efforts in challenging my criminal convictions.

5. Shortly after my legal team filed a F.R.Crim.P. Rule 33 petition on my behalf, my contact with my power of Attorney Suneel Chakravorty was cut off with no explanation or valid reason. Mr. Chakravorty serves as a go between for myself and my legal team, and denying him access was a major disruption to my legal efforts.

6. I was held in disciplinary segregation for 97 days with no valid reason given.

7. On January 6, 2022, I submitted an informal complaint to initiate the grievance process.

8. The issues I intended to grieve were: 1) I was punished for violating a policy, but I was never told what the policy was; 2) Without knowing what policy was violated, I could not defend myself against the disciplinary action; and 3) The charges were changed in the middle of the disciplinary process.

1

9. I believe that these issues were deliberate attempts to retaliate against me for trying to challenge my criminal conviction.

10. The disciplinary hearing report states that I violated Code 396 – Use of the mail (email) for abuses other than criminal activity and Code 397 – Use of the telephone for abuses other than criminal activity.

11. The report states that I used my cellmate to give messages to Nicole Clyne. However, I was able to speak with Ms. Clyne directly at that time, so there was no reason to do anything improper in order to speak with her.

12. I was able to visit with Ms. Clyne only 2 days after being put in the SHU as punishment for allegedly trying to talk to her through my cellmate.

13. On appeal, the discipline was upheld because I admitted the actions that were claimed. However, the actions I admitted to were not violations of the policies cited.

14. On June 9, 2022, I filed a Central Office Administrative Remedy Appeal. I complained that the responses I received failed to address the three issues that I had initially raised in my grievance.

15. I never received a response to the Central Office Administrative Remedy Appeal.

16. On July 26, 2022, I was assaulted while walking to a table with my food in the dining hall.

17. I did not fight back.

18. I was placed in disciplinary segregation for having been assaulted.

19. I was given a disciplinary ticket for "fighting" and have had my privileges revoked and was placed in segregation "pending investigation".

20. I have had no contact with Mr. Withers prior to his assault on me.

21. After the assault, I was placed in the SHU.

22. I was dizzy for several days and could not get out of bed.

23. While in the SHU, I was not able to get grievance forms.

24. The counsellor only comes through one time per week, and if I am not able to get their attention while they are passing my door, I am not able to communicate with them.

25. On August 19, 2022, I submitted an informal complaint on plain paper to the counsellor.

26. I did not get a receipt.

27. I believe that I was given a disciplinary ticket as retaliation for the recent publicity that my case has received as a result of my efforts to challenge my conviction.

28. I have done everything in my power to pursue administrative remedies for these acts of retaliation.

29. I have filed official administrative remedy forms about the retaliation.

30. The responses did not address the issues I raised, including retaliation.

31. I have difficulty obtaining official forms, so I have submitted administrative grievances on plain paper.

32. I have no way of knowing if the grievance on plain paper was treated as a grievance, or if I will receive a response.

33. Due to these facts, I believe that submitting further grievances on the issue of retaliation would be futile.

34. I believe that submitting further grievances regarding retaliation would result in further retaliation against me.

Dated September 6, 2022

_Keith Alan Raniere_ (signature)
Keith Alan Raniere