Arthur L. Aidala, Esq.
LAW OFFICES OF AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor, New York, NY 10036
(212) 486-0011 * Fax - (917) 261-4832
aidalaesq@aidalalaw.com
Attorney Appearing Pro Hac Vice
Counsel for Plaintiff

DISTRICT COURT FOR THE UNITED
STATES DISTRICT OF ARIZONA

-----------------------------------------------------------X
:
KEITH RANIERE, :
:
:
:
Plaintiff, :    Civil Action No.:
:    4:22-cv-00561-RCC
v. :
:
MERRICK GARLAND, US ATTORNEY :
GENERAL; COLETTE PETERS, DIRECTOR :
FEDERAL BUREAU OF PRISONS; :
UNKNOWN CURRENT WARDEN USP :
TUCSON, ANTHONY GALLION (all in their :
official capacities), :
:
Defendants. :
-----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION ON FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

AIDALA, BERTUNA & KAMINS P.C.

Arthur L. Aidala, Esq.
546 5th Avenue, 6th Floor
New York, New York
(212) 486-0011
aidalaesq@aidalalaw.com

*Attorneys for Plaintiff Keith Raniere*

1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………………… 3

STATEMENT OF FACTS……………………………………………………………… 4

ARGUMENT……………………………………………………………………………. 6

    I.  ADMINISTRATIVE REMEDIES WERE UNAVAILABLE TO PLAINTIFF………………………………………………………………… 6

        A.  Prison Officials Prevented, Thwarted, or Hindered Plaintiff's Efforts…………………………………………………………… 8

        B.  BOP Retaliation - Prison Officials Threatened or Retaliated Against Plaintiff…………………….................................................... 9

        C.  BOP National Decisions are Outside the Scope of the Grievance Process……………………………………………………………13

        D.  Prison Officials Denied Plaintiff's Access to Forms……………………………………………………………… 15

    II.  DISCOVERY WILL SHOW PLAINTIFF'S EFFORTS TO EXHAUST ADMINISTRATIVE REMEDIES…………………………………………… 16

CONCLUSION………………………………………………………………………18

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Brown v. Croak*, 312 F.3d 109, 112-113 (3d Cir. 2002)................................................ 6

*Camp v. Brennan*, 219 F.3d 279, 280-81 (3d Cir. 2000)............................................... 6

*Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)................................................... 7

*Fam. Home & Fin Ctr., Inc. v. Fed Home Loan Mortgage Corp.*
525 F.3d 822, 827 (9th Cir.2008)................................................................................ 17

*Kaba v. Stepp*, 458 F. 3d 678 (7th Cir. 2006)............................................................... 6

*Marella v. Terhune* 568 f 3d. 1024, 1026 (9th Cir. 2009)............................................ 15

*Mitchell v. Horn*, 318 F.3d 523, 529 (5thCir.2003)..................................................... 7

*McKinney v. Carey*, 311 F. 3d 1198, 1199-200 (9th Cir. 2002).................................... 6

*Ray v. Kertes*, 285 F.3d 287, 291 (3d Cir. 2002)......................................................... 6

*Rodriquez v. County of Los Angels*, 891 F. 3d 776, 793 (9th Cir. 2018)..................... 7

*Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010)................................................. 7

*Ross v. Blake* 578 U.S. 632, 644 (2016)................................................................... 7, 12

*US v. Raniere, Eastern District of New York, 18-cr-204*........................................ 10-12

*US v. Raniere, Second Circuit, 20-3520, Doc. 102 at 35, n.3*................................... 10

*William Anthony Fly v. Warden of United States Penitentiary,*
*Tucson, Seventh Circuit, 21-1495* ......................................................................... 11, 13

*Woodford v. Ngo*, 548 U.S. 81, 102 (2006)................................................................. 6

**Statutes, Rules, and Guidelines**

28 C.F.R. § 540 (B)...................................................................................................... 10

28 C.F.R. § 540.2......................................................................................................... 10

28 C.F.R. § 542.10-542.10.......................................................................................... 13

28 C.F.R. § 542.10-542.15.......................................................................................... 14

28 C.F.R. § 542.10-542.19.......................................................................................... 13

28 U.S.C. § 2255.......................................................................................................... 4

42 U.S.C. § 1997e ("PLRA")....................................................................................... 6

42 U.S.C. § 1997 e(a).................................................................................................. 6

## STATEMENT OF FACTS

Plaintiff Keith Raniere is a federal inmate at the United States Penitentiary (USP Tucson) in Tucson, Arizona. He is serving an aggregate sentence of 120 years for racketeering conspiracy, racketeering, forced labor conspiracy, wire fraud, sex trafficking conspiracy, sex trafficking of Jane Doe 5 and attempted sex trafficking of Jane Doe 8. He is expected to be released from custody in June 2120.

Plaintiff filed the Complaint on December 16, 2022, alleging the Federal Bureau of Prisons is interfering with his First and Sixth Amendment rights and a motion for preliminary injunction. Plaintiff asserts in:

<u>Count I</u> "Unlawful Frustration and Interference with First Amendment Access to the Courts." Violation of Plaintiff's First Amendment right of access to the courts based on Defendants' alleged interference with Plaintiff's ability to communicate with his attorneys and their agents. Plaintiff was allowed three legal visits over an 8-month period since September 2023, during which his Federal Rules of Criminal Procedure Rule 33 reply and application for a writ of habeas corpus made pursuant to 28 U.S. Code § 2255 were due. This Rule 33 motion, alleging FBI evidence tampering is the same motion that Plaintiff contends instigated retaliation from the Defendants, as brought up in Plaintiff's Complaint. He has been afforded one visit since these filings, and was afforded limited access to legal calls, which was to his prejudice considering the number of court proceedings and their complexity.

<u>Count II</u> "Retaliation Based on Rights Protected Under the First Amendment." Retaliation claim based on Defendant's alleged interference with Plaintiff's right to communicate with friends, business partners, and criminal defense attorneys and their agents about his finances, legal affairs, conditions of confinement, and preparation for challenges to his conviction.

<u>Count III</u> "Sixth Amendment Interference with Representation by Counsel." Defendants' alleged interference with the confidential relationship between Plaintiff and his criminal defense attorney.

Plaintiff sought five remedies:

1. Plaintiff receive all legal calls and visits with attorneys that are requested by his attorney;
2. Plaintiff's power-of-attorney, Suneel Chakravorty be recognized as a legal professional for purposes of communicating confidentially with Plaintiff;
3. Plaintiff be released from the SHU and returned to his original unit;
4. Plaintiff be placed in a single cell for safety if he remains in the SHU; and
5. Plaintiff is not transferred to another prison.

Two issues raised in the complaint have been resolved, such as being released from Secure Housing Unit (SHU) and remaining at his current prison. The rest of the issues raised by Plaintiff remain unresolved.

In their Summary Judgment Motion, Defendants argue that Plaintiff's claims should be dismissed because he failed to exhaust available administrative remedies prior to filing the Complaint. Defendants claim Plaintiff has not exhausted a single administrative remedy stating Plaintiff has failed to show an attempt at informal resolution, has not appealed to the region or filed an appeal to the Office of General Counsel, did not provided copies of his BP-9 and BP-10 to Office of General Counsel, and did not re-submit his appeal in proper form within fifteen days from receipt of the rejection notice.

Plaintiff has filed twenty administrative remedy appeals. Four appeals were to the Office of General Counsel, one pertained to an appeal of his disciplinary sanctions imposed on October 26, 2021, which related to patterns of retaliation that underpin the causes of action in this litigation. The others were rejected for procedural reasons, with some being answered by National and others being ignored. Defendants claim Plaintiff has not cured those deficient filings and that Plaintiff has not exhausted a single administrative remedy regarding any of the issues in the Complaint. On the other hand, Plaintiff contends he has exhausted his "available" administrative remedies, the Defendants' arguments are misplaced and flawed, and their motion should be denied.

## ARGUMENT

I.     ADMINISTRATIVE REMEDIES WERE UNAVAILABLE TO PLAINTIFF

The Prison Litigation Reform Act 42 U.S.C. § 1997e ("PLRA") provides that no prisoner shall bring an action "with respect to prison conditions" under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997 e(a). Federal prisoners must first exhaust inmate grievance procedures. An inmate must fully exhaust all administrative remedies before the complaint is filed. *McKinney v. Carey*, 311 F. 3d 1198, 1199-200 (9th Cir. 2002)

There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court. While exhaustion is a mandatory requirement for bringing a suit, one exception exists. The PLRA contains its own, textual exception to mandatory exhaustion. Under the PLRA, a prisoner needs exhaust only "available" administrative remedies. See *Woodford v. Ngo*, 548 U.S. 81, 102 (2006) (holding that inmates are only required to exhaust administrative remedies that are available.).

The availability of administrative remedies to a prisoner is a question of law. *See Ray v. Kertes*, 285 F.3d 287, 291 (3d Cir. 2002). An administrative remedy may be found to be unavailable where a prisoner is prevented by prison authorities from pursuing the prison grievance process. *See e.g., Camp v. Brennan,* 219 F.3d 279, 280-81 (3d Cir. 2000); *Brown v. Croak,* 312 F.3d 109, 112-113 (3d Cir. 2002).

The availability of a remedy is not a matter of what appears on paper, but rather whether the process is actually available for the prisoner to pursue. *Kaba v. Stepp*, 458 F. 3d 678 (7th Cir. 2006); see also *Rodriguez v County of Los Angeles*, 891 F3d 776, 793 (9th Cir 2018). When prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered "available." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prison officials may not take unfair advantages of the exhaustion requirements. A remedy becomes

"unavailable" if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting administrative remedies. *Id.* at 809; *see also Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) (holding that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA"); *see also Ross v. Blake*, 578 U.S. 632, 644 (2016).

Courts have recognized circumstances in which a prisoner can be excused from meeting PLRA's exhaustion requirements. These situations include when administrative remedies are "unavailable" which include when "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of administrative remedies;" prison officials threaten or retaliate against prisoners for filing grievances; or prison officials deny a prisoner the necessary grievance forms. *Mitchell v. Horn*, 318 F.3d 523, 529 (5th Cir. 2003).

Defendants claim Plaintiff has not exhausted a single administrative remedy. They state Plaintiff has failed to show an attempt at informal resolution, has not appealed to the region or filed an appeal to the Office of General Counsel, did not provide copies of his BP-9 and BP-10 to Office of General Counsel, and did not re-submit his appeal in proper form within fifteen days from receipt of the rejection notice.

Plaintiff contends that he has exhausted all available administrative remedies and that the record demonstrates the formal and informal processes taken to exhaust administrative remedies. Plaintiff further contends that by BOP policy, no remedies were available, due to the complained of issues originating from above the Warden, and in the national office. Plaintiff argues herein that Defendants have hindered his ability to engage available remedies to complete the full administrative process in the manner detailed below.

**A. Prison Officials Prevented, Thwarted, or Hindered Plaintiff's Efforts**

7

Although BOP has denied or not responded to several of Plaintiff's appeals, Plaintiff, his counsel and legally authorized U.S. Department of Justice and Federal Bureau of Prisons representative (aka "prison consultant") reached out to Office of General Counsel to resolve all appeals in an effort to exhaust administrative remedies (See Exhibit A - Settlement Discussions). Rather than outright deny Plaintiff's efforts due to not completing sequential paperwork prescribed by the grievance process, Assistant U.S. Attorney Denise Faulk engaged in negotiations to resolve all appeals by Plaintiff.

In an effort to resolve the pending litigation between the Plaintiff and the Defendant, Plaintiff proposed the following settlement:

1. Legal Calls-two (2) legal calls per week, each 2 hours in duration
2. Legal Visits-two (2) legal visits per month (one every other week)
3. Visitor List (personal)-confirmation/restoration of visiting privileges of Eduardo Asunsolo.
4. Call List-restoration and/or addition of the following individuals:
    a. Craig Rothfeld, legally authorized BOP and DOJ representative
    b. Eduardo Asunsolo
5. TRULINCS/CORRLINKS-access/usage with Craig Rothfeld and Plaintiff's attorneys only.
6. Single Cell-single cell for security reasons
7. UPS/Tucson-Plaintiff remain at USP Tucson
8. Suneel Chakravorty (power of attorney)-already recognized as a legal professional, be permitted to attend legal visits only.

Although significant time has been spent trying to resolve Plaintiff's concerns, the parties were unable to come to an agreement. Plaintiff continues to have his First and Sixth Amendment rights violated regarding access to his legal representation and the courts. Defendants claim

Plaintiff has failed to exhaust administrative remedies by not appealing to the Office of General Counsel. Yet, an Assistant U.S. Attorney representing the Office of General Counsel had been actively negotiating with Plaintiff's counsel and prison consultant to resolve all grievances. The failed negotiations with the Office of General Counsel signify the last step in the grievance process and demonstrate Plaintiff's efforts to exhaust administrative remedies. As such, Defendants' argument based on the assertion that the grievance process has not been exhausted is moot.

As previously stated, under the PLRA, a prisoner must exhaust his or her administrative remedies with the correctional institution, prior to filing a suit. They must follow these procedures or policies properly and to their conclusion. Whatever avenues for redress are available to a prisoner-plaintiff must be explored and fully pursued. Plaintiff actively participated in open negotiations to resolve his grievance with Defendants. Defendants participated in negotiating remedies to Plaintiff's grievances outside the normal policy. As Plaintiff and his legal representation were actively negotiating, Defendants filed a Motion for Summary Judgment on Exhaustion. Defendants' actions demonstrate an unwillingness and inability to adequately resolve Plaintiff's concerns. Plaintiff's efforts demonstrate his commitment to exhausting all "available" administrative remedies despite the Defendants' hindrance.

### B.  BOP Retaliation - Prison Officials Threatened or Retaliated Against Plaintiff

On February 26, 2021, Plaintiff's legal mail was opened, withheld from him, and sent to the prosecution, who alleged it violated the Court's protective order. See *US v. Raniere,* Eastern District of New York, 18-cr-204, ECF. No 1020, at 2.  Such specific knowledge regarding the Plaintiff's protective orders is indicative of tremendous coordination and raises the question as to whether the BOP has an active policy to review all inmates' legal mail for potential violations of Court orders or whether this was specific to Plaintiff's case in a coordinated effort of retaliation.

Section 28 C.F.R § 540.2 states that Special Mail includes correspondence received by any attorneys. Particular care is taken to ensure "Special Mail" is kept confidential. C.F.R. 540 (B). Violating Plaintiff's rights to confidentiality and compounding that violation by sharing that legal mail with the prosecution, demonstrates the lengths that the administration at USP Tucson is willing to take to discriminate, intimidate and retaliate against Plaintiff.

On May 7, 2021, Plaintiff indicated he intended to file a Rule 33 Motion challenging his conviction. (*US v. Raniere*, Second Circuit, 20-3520, Doc. 102 at 35, n.3.) On July 20, 2021, Plaintiff's counsel had a contentious exchange with Judge Nicholas Garaufis that received publicity where Judge Garaufis motioned to a tissue box and stated "give him this to cry on." (Civil Complaint, Doc. 1, ¶ 89.) Two days later, on July 22, 2021, Plaintiff was placed in the SHU at USP Tucson for asking an inmate to "send his love" to a person who was on his approved phone list and visitation list. (*Id.,* ¶ 90) This is a person with whom Plaintiff spoke with regularly, often multiple times a day. (Exhibit B – Declarations from Plaintiff and Cellmate, Bates 15 ¶ 11)

On May 3, 2022, Plaintiff filed his Rule 33 Motion alleging government tampering of key evidence supported by three forensic examiners, including 20-year veteran of the FBI, retired Special Agent Dr. James Richard Kiper, Ph D. (*US v. Raniere*, Eastern District of New York, 18-cr-204, Doc. 1169) One day later, on May 4, 2022, Plaintiff was informed by SIA Anthony Gallion that his phone list would be "scrubbed" within 24 hours, stating the decision was coming from "much higher up." According to SIA Gallion, this decision was reached in consultation with the BOP Counter-Terrorism Unit (CTU), a national entity that previously was monitoring Mr. Raniere's communication with Mr. Chakravorty while housed at Metropolitan Detention Center (MDC) Brooklyn and recommended to the Warden that Mr. Chakravorty be removed as an approved contact. (Doc. 14-2 at Bates 276-291.)

On July 26, 2022, Plaintiff was assaulted in the chow hall, while in close proximity to correctional officers. (Exhibit B at Bates 1 ¶ 3) Plaintiff did not fight back, yet he was sent to the Special Housing Unit ("SHU") for 245 days. Within a week, while in the SHU, Plaintiff was cleared of "disciplinary segregation," yet was held in the SHU for "administrative detention." (*Id.* at Bates 1 ¶ 2 – Bates 2 ¶ 8; Bates 7 ¶10) Notably, at USP Tucson, there is no difference in conditions between "administrative detention" and "disciplinary segregation." (*Id.* at Bates 2 ¶ 16-20) Plaintiff's total days in the SHU were 245. While housed in the SHU, Plaintiff was forced to share a cell with a trans-gender inmate who verbally "vowed to kill sex offenders" and has a history of filing approximately 75 Prison Rape Elimination Act ("PREA") complaints. (*Id.* at Bates 3 ¶ 27; Bates 7 ¶11; *William Anthony Fly v. Warden of United States Penitentiary, Tucson*, Seventh Circuit, 21-1495 Doc. 24 at ¶ 17, 21) A decision that contradicts the safety and security of the Plaintiff and facility. The timeline of events described above and the relevant circumstances show that this was done in retaliation against Plaintiff for exercising his First Amendment rights and in order to chill the exercise of his rights.

The morning after being placed with the aforementioned inmate, on September 9, 2022, Plaintiff and his new cell mate were placed into a holding cell by USP Tucson Warden, SIA and correctional officers, where they were made to sit in a cell that contained two piles of day-old contaminated feces and forced to eat lunch in the feces contaminated cell demonstrating the continued discrimination, intimidation, and retaliation against Plaintiff. (Civil Complaint, Doc. No. 1, ¶ 198.); Exhibit B at Bates 6 ¶ 7, Bates 10 ¶ 6 - Bates 12 ¶ 12)

On October 23, 2023, Plaintiff filed a reply to the government's opposition to his request for discovery relating to his Rule 33 Motion. (*US v. Raniere*, Eastern District of New York, 18-cr-204, Doc. 1223) Eleven days later, on November 3, 2023, Plaintiff was sent to the SHU involuntarily, allegedly for his own safety. (Exhibit C –Email Correspondence Between Craig Rothfeld and BOP Counselor Nava) Three days later, the deadline for his reply to the

government's opposition to Rule 33 was scheduled for November 30, 2023. (*US v. Raniere*, Eastern District of New York, 18-cr-204, Doc. 1224)

When prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation, such thwarted inmates are not required to exhaust administrative remedies. See *Ross v. Blake*, 578 U.S. 632, 644 (2016). Actions by USP Tucson administrators demonstrate an intimidating stance toward Plaintiff's due process rights by interfering and hindering his ability to overturn his conviction and his ability to exhaust administrative remedies within the prison grievance system.

There is no coincidence that significant events in Plaintiff's case to resolve the criminal conviction are followed by retaliation by the USP Tucson and BOP administrative staff. Evidence that the USP Tuson and BOP administrators are participating in intimidation is further confirmed by an email dated March 27, 2024, from Denise Ann Faulk, Assistant United States Attorney to Imran H. Ansari, Esq. regarding Plaintiff's request to use TRULINCS email. She states:

> As it pertains specifically to sex offenders, inmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of e-mail, or jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff, should be considered for restriction.

Since Plaintiff is considered a sex offender, it would be counter-intuitive to have him housed with a trans-gender inmate who has made verbal threats to kill any cellmate convicted of a sex offense, and where that inmate has admitted in writing to threatening to assault cellmates convicted of a sex offense. See *William Anthony Fly v. Warden of United States Penitentiary, Tucson, supra*, at ¶ 17, 21.

Prison staff themselves have demonstrated retaliation against Plaintiff, stating that decisions against Plaintiff originated from "above the Warden" coming from the national office level. (Civil Complaint, ¶ 110.) When Plaintiff's contact list account was scrubbed by SIA,

Plaintiff was informed that the decision was coming straight from the national office level, and that it was above the Warden. Based on all the facts, Plaintiff contends that most, if not all, the retaliatory conduct comes from a higher authority than the Warden. According to BOP Program Statement 1330.18, Section 13(b): "Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision." As such, the grievance process was not only unavailable, it was futile.

### C. BOP National Decisions are Outside the Scope of the Grievance Process

The Bureau of Prisons (BOP) Inmate Grievance Process, codified under 28 C.F.R. § 542.10-542.19, is designed to allow inmates to address complaints and seek resolutions for issues that arise within the specific context of their imprisonment. However, this process is fundamentally limited to addressing matters that fall within the operational purview of individual institutions and regional directors. When decisions are made at the national level, outside the scope of institutional or regional control, the grievance process becomes inapplicable. This argument asserts that inmates cannot utilize the BOP grievance process for national level directives because there is no available process to grieve such decisions.

The BOP grievance process is structured to address issues arising from the daily operations and decisions within specific institutions. According to 28 C.F.R. § 542.10, the grievance process applies to "an issue relating to any aspect of his/her own confinement." This is interpreted as covering institutional or regional decisions rather than those made at the BOP's national headquarters.

National-level decisions are typically policy-driven and involve comprehensive administrative and strategic considerations that are beyond the review capacity of the institutional grievance procedure. The regulatory framework does not provide a mechanism for the review of such decisions through the standard grievance process. Therefore, national-level decisions are not amenable to resolution within this procedural construct.

Institutional and regional administrators lack the jurisdiction to alter or overturn national-level policies or decisions. The grievance process is designed to handle issues within the operational control of the institution or region, not those emanating from the central BOP administration. According to 28 C.F.R. § 542.15, appeals to the General Counsel are the final administrative remedy, but this cannot extend to overarching national policies or directives that the General Counsel cannot unilaterally modify or nullify.

The BOP inmate grievance process is inherently designed to address issues at the institutional and regional levels, not at the national level. There are several key events here that demonstrate that the retaliatory efforts came from the National Level. Based on this evidence, Plaintiff contends that most, if not all, of the following retaliatory conduct comes from a higher authority than the Warden:

a. Opening of Plaintiff's Legal Mail and forwarding it to the Prosecution;

b. "Scrubbing" Plaintiff's contacts, and informing him that "this is above the Warden and National;"

c. Making Plaintiff sit and eat in a cell with contaminated feces;

d. 245 days of SHU placement after submitting a Rule 33 Motion and Motion to Stay Appeal;

e. BOP paperwork citing issues from "Metropolitan Detention Center (MDC) in Brooklyn," which is not a local issue, demonstrating a coordination indicative of "National" decision making, also supported by requests to the Warden from the CTU, a national entity within the BOP.

Therefore, Plaintiff could not utilize the grievance process for national-level decisions, necessitating alternative mechanisms for addressing such concerns.

The rationale for this policy is clear, and not a mere technicality: there is a clear conflict of interest if the BOP official entrusted to investigate a complaint is the same official who was

involved, or whose staff, was involved in the conduct at issue. As the alleged retaliatory conduct was purportedly directed by personnel above the Warden, there is no way to properly grieve the issue, based on the above BOP policy, as there is no higher authority, that is neither involved nor whose staff are involved, to investigate the complaint. As National issues are intractable through the grievance process, the Court has to be the adjudicating body.

### D.      Prison Officials Denied Plaintiff's Access to Forms

In *Marella v. Terhune* 568 f 3d. 1024, 1026 (9th Cir. 2009), an inmate was excused from the exhaustion requirement where the inmate was unable to access the form necessary to submit a grievance.  While Plaintiff has been housed in the SHU, he has not been provided access to appropriate forms to file his grievances and appeals and responses in a timely manner.  (Exhibit B at Bates 4 ¶ 38-39)

During Plaintiff's time in the SHU, at times when he has been provided the appropriate forms, he has been able to file a Request for administrative Remedy (BP-9's), a Regional Administrative Remedy Appeal (BP-10) and appeals to the General Counsel in Central Office (BP-11).  On numerous occasions, prison personnel have taken all his legal work and denied his access to BP-11 Forms, his legal materials, responses to appeals, attorney-client privileged phone calls and meetings.  Such behavior by the prison administration has prevented Plaintiff from accessing all levels of BOP's prison grievance process.  Plaintiff specifically alleges he was not able to use the administrative remedy process because he was denied access to the forms required for the process, a copy machine, and legal materials.

The aforementioned principle ensures that prison officials cannot unfairly take advantage of the exhaustion requirement. If prison employees fail to respond to a properly filed grievance, the remedy becomes "unavailable" for the inmate. Similarly, if a prisoner is unable to obtain grievance forms and, as a result, cannot file a grievance, no administrative remedy is considered

15

"available," and the prisoner may seek relief in court. The PLRA recognizes this important exception to protect inmates' rights and ensure fair access to the grievance process.

## II. DISCOVERY WILL SHOW PLAINTIFF'S EFFORTS TO EXHAUST ADMINISTRATIVE REMEDIES

The BOP grievance process involves initial informal resolution attempts also referred to as cop-outs (BP-8), followed by formal grievances at the institutional level (BP-9), appeals to the regional director (BP-10), and finally, appeals to the General Counsel (BP-11) for decisions not satisfactorily resolved at lower levels. Here, decisions originated at the national level and do not fit within this framework as they are not subject to institutional or regional oversight. Plaintiff tried to resolve issues at the institutional level, requesting additional information to effectively seek administrative remedies (*See* Exhibit D-Central Office Administrative Remedy Appeal(s)).

Plaintiff requested certain discovery under Federal Rule of Civil Procedure 56(d) to prove his claim that the BOP prevented him from exhausting his administrative remedies. Requested discovery included:

1. **Logs:** SHU entry, daily or other logs indicating the frequency, or lack thereof, of visits by Mr. Raniere's unit team to the SHU, which would bolster his claim that he was unable to access the appropriate forms in a timely manner or at all.
2. **Policy Clarification:** According to 542.14(2) "The inmate shall place a single complaint or a reasonable number of closely related issues on the form." The application of the rule is unclear and seemingly arbitrarily enforced. Who decides if issues are closely related enough, or what a reasonable number of issues is?
3. **Reports and Investigations:** Any reports responsive to Plaintiff's grievances or generated through the investigatory process. Records at each level of the process would determine if defendants were operating, as they must, in good faith, and not rejecting

grievances for the smallest defect or procedural flaw, real or imagined, without investigating the issues raised.

To prevail on Rule 56(d), the requesting party must show: (1) It has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) The facts sought exist; and (3) The sought after facts are essential to oppose summary judgment. *Fam. Home & Fin Ctr., Inc. v. Fed Home Loan Mortgage Corp.* 525 F.3d 822, 827 (9th Cir. 2008)

Plaintiff requested specific factual documents through discovery which Defendants have not produced. (See Exhibit E-Limited Discovery). The information requested by the Plaintiff such as specific logs, reports and policy clarifications are within BOP purview and have not been made readily available. Plaintiff is not seeking extraordinary documentation, but rather reports that are produced in the ordinary course of business as required by law. The sought after facts will demonstrate the Plaintiff's efforts to exhaust administrative remedies and the coordinated efforts to hinder Plaintiff's efforts to exhaust administrative remedies.

## CONCLUSION

Plaintiff complied with the PLRA's requirement to exhaust all "available" administrative remedies before filing the Complaint. Plaintiff has been denied access to critical information which demonstrates his efforts to exhaust administrative remedies and Defendants' coordinated efforts to hinder his efforts. The Court should deny summary judgment for Defendants for failure to exhaust administrative remedies. Accordingly, for the reasons set forth herein, the Plaintiff requests that the Court deny Defendant's Motion for Summary Judgment.

Dated: June 21, 2024
New York, New York

                         Respectfully submitted,

                         **AIDALA, BERTUNA & KAMINS P.C.**

By:

                         _____/s/ Arthur L. Aidala_____
                         Arthur L. Aidala, Esq.
                         546 5th Avenue, 6th Floor
                         New York, New York
                         (212) 486-0011
                         iansari@aidalalaw.com

                         *Attorneys for Plaintiff Keith Raniere*