GARY M. RESTAINO
United States Attorney
District of Arizona
DENISE ANN FAULK
Assistant U.S. Attorney
Arizona State Bar No. 12700
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Email: denise.faulk@usdoj.gov
Attorneys for the Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Raniere,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Merrick Garland, et al.,<br><br>　　　　　Defendants. | CV 22-00561-TUC-RCC<br><br>**DEFENDANTS' REPLY<br>IN SUPPORT OF MOTION<br>FOR SUMMARY JUGMENT<br>ON EXHAUSTION** |

Defendants Garland, Peters, Gutierrez and Ulrich, acting through undersigned counsel in their official capacities, reply in support of their motion for summary judgment.

**I.   Background**

On May 1, 2023, Defendants filed their motion for summary judgment. (Doc. 35.) Defendants supported the motion with a separate Statement of Facts (SOF). (Doc. 36.) The SOF was based on a sworn Declaration and authenticated documents. (*Id.*)

On May 2, 2023, this Court entered its Order warning Plaintiff that the Court could dismiss his Complaint if he did not properly respond to the motion. (Doc. 37.) The Court specifically warned Plaintiff that he "cannot simply rely on what [his] complaint says." (*Id.* at 2.) The Court directed him to "set out *specific facts in declarations, depositions, answers to interrogatories, or authenticated documents*" to contradict Defendants' facts "and show that there is a genuine issue of material fact for trial." (*Id.* Emphasis added.)

Further, the Court directed Plaintiff to LRCiv 56.1(b), which requires a party

opposing a motion for summary judgment to file a separate statement of facts showing whether he disputes each of the moving parties' facts and providing additional facts. (*Id.* at 3.) The rule also mandates that

> Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts.

(*Id.*)  And the Court directed Plaintiff to cite to the specific paragraph in his statement of facts that supports each assertion of fact in his memorandum. (*Id.*, citing LRCiv 56.1(e.).)

Thereafter, Plaintiff filed many motions to extend time to respond to the motion. (Docs. 38, 39, 48, 52, 55, 57, 59, 61, 63, 65, 67, 69.)  The Court eventually extended Plaintiff's deadline to June 21, 2024, over one year after the original deadline. (Doc. 70.)

On June 21, 2024, Plaintiff filed his Response to the Defendants' Motion for Summary Judgment on Exhaustion. (Doc. 71.)  Plaintiff did not file a controverting statement of facts. (Docket, generally.)  Plaintiff did not include references to "the specific admissible portion of the record supporting the party's position." (Doc. 71.)

Plaintiff variously argued 1) that he exhausted his administrative remedies because negotiations with undersigned counsel, who does not represent the Office of General Counsel, constitutes exhaustion; 2) that prison officials prevented him from exhausting by allegedly retaliating against him on issues completely unrelated to administrative remedies; 3) that "national issues" are not subject to the administrative remedy process; and 4) that he was denied forms at unspecified times by unspecified people, although he admits he was given BP-9's, BP-10's and BP-11's during the operative time. (Doc. 71 at 6-15.)

Finally, Plaintiff asserts that discovery will show his efforts to exhaust administrative remedies. (*Id.* at 16.)

## II.   Legal Standards

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The party moving for summary judgment bears the initial burden to identify those

portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Then, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).  "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The PLRA provides that no prisoner shall bring an action "with respect to prison conditions" under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must fully exhaust all administrative remedies *before* he files the complaint. *McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002). Once the defendant shows an available administrative remedy and the failure to exhaust, the plaintiff must demonstrate that "the existing and generally available administrative remedies [were] effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

### III. All Facts in Defendants' SOF are Deemed Admitted.

This Court informed Plaintiff that he was required to "set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents . . . that contradict the facts shown in the Defendants' declarations and documents." (Doc. 37 at 3.) The Court reminded Plaintiff that Defendants' facts could be deemed admitted if he failed to controvert Defendants' facts. (*Id.*) Nevertheless, Plaintiff failed to provide a separate statement of facts or controvert any of Defendants' facts. (Doc. 71.) Under LRCiv. 56.1(b), all facts in the SOF are deemed admitted for the purposes of the motion.

### IV. Plaintiff Failed to Exhaust Administrative Remedies

#### A. Negotiations with counsel do not constitute exhaustion.

Plaintiff makes the novel argument that negotiations with the attorney for the Office of General Counsel exhausts administrative remedies. (Doc. 71 at 8.) He asserts that his prison consultant "reached out to Office of General Counsel to resolve all appeals in an

effort to exhaust administrative remedies." (*Id*. at 8.)  For support, he attaches an unauthenticated copy of a letter from his prison consultant to undersigned counsel containing a settlement offer.[1] (*Id*. at 8; Doc. 71-1 at 2-6.)  His conclusion – without citation – that "[t]he failed negotiations with the Office of General Counsel signify the last step in the grievance process and demonstrate Plaintiff's effort to exhaust administrative remedies" (*id*.) is legally incorrect, unsupported and contradicted by the record.

First, Plaintiff's argument is legally incorrect.  An inmate must complete the administrative review process in accordance with the applicable rules, including "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90, 94 (2006).  Proper exhaustion under § 1997e(a) requires following "all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 90  (cleaned up) (emphasis in original).  To properly exhaust, an inmate must comply with the grievance procedures, rules and deadlines of the institution where he is incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Defendants detailed the Bureau's Administrative Remedy Program in their SOF, which is deemed admitted under LRCiv 56.1(b). (Doc. 36 at 2-3; SOF 6-7.)  Negotiations with the Office of General Counsel does not appear in the Program. (*Id.*)  Instead, the final step in the Bureau's Administrative Remedy Program is a BP-11 properly submitted to the Office of General Counsel. (*Id.*)  Plaintiff does not allege that he properly submitted a BP-11 regarding the allegations in the Complaint before filing the Complaint. (Doc. 71.)  Moreover, the unauthenticated copies of grievances he attached to the response do not show exhaustion prior to filing the Complaint. (Doc. 71-4.)

Second, Plaintiff's argument is also factually incorrect.  Plaintiff bases his argument on his unsubstantiated assertion that undersigned counsel represents the Office of General Counsel. (Doc. 71 at 8.)  Counsel does not, and nothing in Plaintiff's prison consultant's

---

[1] The letter does not mention the Office of General Counsel or administrative remedies.  (Doc. 71-1 at 2-6.)  Nor is undersigned counsel "an Assistant U.S. Attorney representing the Office of General Counsel," as Plaintiff asserts without reference to the record.  (Doc. 71 at 9.)

- 4 -

letter indicates that Plaintiff has any reason to believe she does.  (*See* Doc. 71-1 at 2.)  The letter – which does not mention administrative remedies – does not indicate that it is presented to attempt to exhaust administrative remedies.[2]  (*Id.* at 2-6.)

Third, Plaintiff's argument and the unauthenticated document purportedly supporting it run afoul of Rule of Evidence 408, which generally prohibits introduction of settlement discussions.  "Rule 408 excludes compromise evidence even when a party seeks to admit its own settlement offer or statements made in settlement negotiations."  Committee Notes on Rules – 2006 Amendment.  This is because "[t]he protections of Rule 408 cannot be waived unilaterally because the Rule, by definition, protects both parties from having the fact of negotiation disclosed."  *Id.*  And Plaintiff's novel argument that settlement negotiations somehow constitute administrative exhaustion goes to the issue to be resolved herein, not to one of the permitted exceptions.  *See* Fed.R.Evi. 408(b).

Negotiations with counsel do not constitute proper exhaustion under the Bureau's procedures, rules and deadlines.  *See Jones*, 549 U.S. at 218.

**B.  Plaintiff's speculations regarding alleged retaliation are unsupported and unrelated to administrative remedies.**

Plaintiff speculates that he has been retaliated against.  (Doc. 71 at 9-13.)  His speculations variously involve his theories regarding the Bureau's reaction to his being sent a list of his victims and their declarations of loss, the timing of his Special Housing Unit (SHU) placement relative to a purportedly "contentious exchange" in his New York criminal case, and the timing of his contact list scrubbing relative to his Rule 33 motion in his criminal case.  (*Id.*)  Plaintiff asserts that "[t]he timeline of events described above and the relevant circumstances show that this was done in retaliation against Plaintiff for exercising his First Amendment rights and in order to chill the exercise of his rights."  (*Id.* at 11.)  And – even though none of Plaintiff's speculations involved administrative remedies – Plaintiff asserts that USP Tucson administrators demonstrated "an intimating

---

[2] The letter also does not show that undersigned counsel was "actively negotiating with Plaintiff's counsel and prison consultant."  (Doc. 71 at 9.)  The unauthenticated document purports to be a letter from the prison consultant to undersigned counsel.  (Doc. 71-1 at 2.)  Plaintiff does not attach any response from undersigned counsel showing active negotiations with the prison consultant.

- 5 -

stance . . . by interfering and hindering . . . his ability to exhaust administrative remedies within the prison grievance system." (*Id.* at 12.) None of his speculations relates to administrative remedies, and he purports to support his theories with allegations from his Complaint and declarations he previously produced to bolster failed claims for preliminary injunctions. (*Id.*)

As noted above, this Court already has informed Plaintiff that in responding to the motion for summary judgment, he "cannot simply rely on what [his] complaint says." (Doc. 37 at 2.) Plaintiff committed the same error when he filed his first failed motion for preliminary injunction in this case,[3] relying solely on the allegations in his Complaint, rather than evidence. (Doc. 3.)

Plaintiff's declarations are mostly recycled declarations which he introduced previously regarding his failed motions for preliminary injunctions.[4] (Doc. 71-2.) Plaintiff's response fails to cite to any portion of the declarations that provides evidence of any thwarted attempts to exhaust.[5] (Doc. 71.)

Plaintiff first submitted the first declaration in support of his Reply to his second motion for a temporary restraining order in *Raniere I*. (Compare Doc. 71-2 at 2-6 with *Raniere I*, Dkt. 43-1 at 2-6.) The Court gave the declaration no consideration because "Plaintiff does not say anything in that Declaration indicating that his access to the courts

---

[3] Plaintiff filed – and lost – three motions for preliminary injunction or temporary restraining orders in his prior case, which the Court dismissed just eleven days before Plaintiff filed the instant case. *Raniere v. Garland*, No. 4:22-cv-00212-RCC (*Raniere I*), Dkt. 7, 18, 34, 44, 45, 52 (D. Ariz.).

[4] Responding to Plaintiff's references to his exhibits is complicated by his failure, once again, to provide an exhibit list, as the District of Arizona Case Management/ Electronic Case Filing Administrative Policies and Procedures Manual, II.N.1.c., requires. Defendants will attempt to identify the various documents by their current and former ECF pages if they can be ascertained. Exhibit B appears to be four separate declarations, dated between October and November 2022. (Doc. 71-2.)

[5] In response to Plaintiff's similar approach in his reply in support of his first request for a preliminary injunction in this case, the Court noted:
> Furthermore, the Court will not forage through the exhibits to speculate how Plaintiff's evidence addresses issues raised in Defendants' response. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

(Doc. 29 at 2.)

- 6 -

has been denied." *Raniere*, 22-212, Dkt. 45 at 7 (Nov. 4, 2022).)

Plaintiff attached his second declaration to his reply in support of his first request for a preliminary injunction in this case. (Compare Doc. 71-2 at 7-10 with Doc. 20-6 at 2-5.) The Court struck it twice. (Docs. 29 and 32.)

Plaintiff's third declaration purports to be from his prior cellmate and has the *Raniere I* caption. (Doc. 71-2 at 11-14.) Plaintiff does not appear to have filed it in *Raniere I*, but he filed it in the instant case in support of his first request for a preliminary injunction. (Doc. 20-16 at 8-10.) Again, the Court struck it twice. (Docs. 29 and 32.)

Plaintiff does not appear to have filed his fourth declaration previously. (Doc. 71-2 at 14-15.) However, it does not show that Plaintiff was prevented from exhausting administrative remedies. Instead, he complains about the result of his exhausted administrative remedy regarding his disciplinary sanction for violating Bureau policy.[6] (*Id.* at 15.) Plaintiff also alleged that he was in the SHU "for 120 days and counting, in part, because I filed these remedies." (*Id.*) As noted above, a party cannot defeat summary judgment based on this kind of conclusory speculation. *See Soremekun*, 509 F.3d at 984 ("Conclusory, speculative testimony in affidavits . . . is insufficient to . . . defeat summary judgment.").

In short, in support of his bald assertion that prison officials "thwarted" his attempts to file administrative remedies regarding the issues in the Complaint, Plaintiff failed to introduce any evidence that they did so.[7] The only "evidence" he provided concerned his speculations regarding the alleged retaliation that underlies the Complaint. (Doc. 71.) Plaintiff failed to introduce any evidence that Bureau employees "thwarted" his non-existent attempts to exhaust his administrative remedies.

**C.  Allegations of "national" retaliation are not exempted from the requirement to exhaust administrative remedies.**

---

[6] Notably, Plaintiff expressed frustration with the outcome of the administrative remedy process, but he did not file suit regarding that exhausted remedy. (*Id.*)

[7] In addition to declarations that are mostly free from mentioning administrative remedies – much less complaining about being prevented from exhausting administrative remedies – Plaintiff attaches unauthenticated emails which fail to mention administrative remedies and unauthenticated copies of unexhausted remedies. (Docs. 71-3, 71-4.)

Plaintiff "contends" that "most" of what he alleges as "retaliatory conduct" originates "from a higher authority than the Warden." (Doc. 71 at 14.) And, having *assumed* that someone "higher" than the Warden made "national" decisions, he asserts, without citation to authority, that appeals to the General Counsel "cannot extend to overarching national policies or directives that the General Counsel cannot unilaterally modify or nullify." (*Id.*) Again, his assertion is unsupported and fails both factually and legally.[8]

First, while Plaintiff *contends* that someone higher than the Warden made the decision to retaliate against him, he provides no *evidence* as to who purportedly made the alleged decision. And he assumes that the General Counsel would have no authority over that unidentified person, but, again, he provides no *evidence* that he does not. As noted above, a party cannot defeat summary judgment based on this kind of unsupported speculation. *See Soremekun*, 509 F.3d at 984 ("Conclusory, speculative testimony in . . . moving papers is insufficient to . . . defeat summary judgment.").

Second, the Supreme Court already has decided that exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 739 (2001). Exhaustion is required "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Porter*, 534 U.S. at 524. Exhaustion is mandatory, and courts have no discretion to excuse it. *Id.*

Plaintiff – like all inmates – was required to exhaust administrative remedies before filing suit. *McKinney*, 311 F.3d at 1199-200. His unsupported contention that someone orchestrated retaliation at the "national" level does not excuse his failure to exhaust.

**D.   Plaintiff failed to introduce any evidence that he was denied forms.**

Plaintiff also asserts that he was denied access to forms. (Doc. 71 at 15.) In his response, he admits that at times while he was in the SHU he was provided forms and filed

---

[8] The Bureau's Administrative Remedy Program does not exclude "national" decisions." (*See* Doc. 36 at 2-3; SOF 6-7.)

BP-9's, BP-10's and BP-11's. (*Id.*) But "Plaintiff *specifically alleges* he was not able to use the administrative remedy process because he was denied access to the forms required for the process, a copy machine, and legal materials." (*Id.* Emphasis added.) That *specific allegation* in the response does not include a citation to the record.

The only citation purportedly supporting Plaintiff's allegation that he was denied forms references two paragraphs in Plaintiff's declaration that, as noted above, he previously submitted in support of his Reply to his second motion for temporary restraining order in *Raniere I*. (*Id.*; Doc. 71-2 at 2-6.) Those paragraphs state, in their entirety:

> 38. My unit team is responsible for giving me grievance forms to allow me to formally contest this situation.
>
> 39. Because my unit team only come once a week I have a very hard time obtaining grievance forms. I ask for them, and the officer often does not remember to bring them the next week.

(Doc. 71-2 at 5.) Plaintiff's conclusory statement does not say he was denied forms and would be insufficient to defeat summary judgment if it did. *See Soremekun*, 509 F.3d at 984 ("Conclusory, speculative testimony in affidavits . . . is insufficient to . . . defeat summary judgment.).

The record is clear that Plaintiff did obtain forms. He filed twenty by May 1, 2023. (Doc. 36 at 5-6; SOF 16.) They included BP-9's, BP-10's and BP-11's. (*Id.* at 6-9; SOF 17-37.) And the record is also clear that Plaintiff could have submitted a copout if he believed his Unit Team was not providing him with forms. (*Id.* at 5; SOF 13.)

Plaintiff failed to provide evidence that he was denied forms such that he should be excused from the requirement that he exhaust administrative remedies.

### E. Plaintiff failed to exhaust administrative remedies.

As detailed in the motion and SOF, the record shows that Plaintiff did not appeal properly an administrative remedy regarding any of the issues in the Complaint to the highest level before filing suit.[9] (Docs. 35, 36.) Many of Plaintiff's remedies and appeals

---

[9] Plaintiff filed each of his BP-9's at the local level prior to filing the Complaint. (Doc. 36 at 6-7; SOF 17-18, 21-27.) The only BP-10 and BP-11 Plaintiff filed before filing the Complaint concerned his appeal of disciplinary sanctions. (*Id.* at 6; SOF 19-20.)

have been rejected due to his refusal to follow the rules, and he has failed to follow the instructions to cure the rejections. (Doc. 36 at 6-9; SOF 17, 24-27, 32, 37.) Under Bureau regulations, no administrative remedy is fully exhausted until the inmate has submitted a proper BP-11 to the Central Office and received a response or the time to respond has expired. (Doc. 36 at 2-3; SOF 6-7.) Plaintiff failed to complete the administrative review process in accordance with the applicable rules. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 94. He did not comply with the "agency's deadlines and other critical procedural rules." *See id.* at 90. Thus, he did not properly follow the steps, "so that the agency [could] address[] the issues on the merits." *See id*. (cleaned up). Plaintiff failed to exhaust administrative remedies before filing the Complaint.

**V.     Plaintiff's Tardy Request for Discovery Cannot Defeat Summary Judgment**

Finally, Plaintiff asserts that discovery will show his efforts to exhaust administrative remedies. (Doc. 71 at 16.) He asserts that he requested discovery through a Rule 56(d) motion, including logs, policy clarification, and reports and investigations. (*Id.*) Plaintiff asserts that he "requested specific factual documents through discovery which Defendants have not produced."[10] (*Id.* at 17.)

Plaintiff did not propound discovery to which Defendants failed to respond. Plaintiff filed a motion for Rule 56(d) discovery which failed to comply with the rule. (Doc. 38.) Plaintiff failed to "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). He failed to show that the facts "exist" and are "essential to oppose summary judgment." *Family Home and Finance Center Inc. v. Freddie Mac*, 525 F.3d 822, 827 (9th Cir. 2008). And he failed to show a foundation in the record for his claim that additional discovery would reveal relevant information. *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1436

---

Plaintiff filed the remaining BP-10's and BP-11's *after* filing the Complaint. (*Id.* at 7-9; SOF 28-36.)

[10] For support, Plaintiff attaches his reply in support of his motion for limited discovery regarding exhaustion of administrative remedies. (Doc. 71-5 at 2.) Plaintiff does not attach any actual discovery requests.

- 10 -

(9th Cir. 1995).

Once Defendants pointed out Plaintiff's complete failure to show the basis for a Rule 56(d) motion, he filed the Reply, which forms the basis for his current argument. (Docs. 71 at 16-17; 71-5.)  That reply, like his reply in support of his first motion for a preliminary injunction in this case, which the Court struck, introduced new material that was not in the motion.  (Doc. 42.)

"When new material is raised in a reply brief, a district court has the discretion to strike that material." *McCoy v. U.S. Collections W., Inc.*, No. CV-14-0048-PHX-LOA, 2014 WL 3898088, 2020 WL 7027558, at *4 (D. Ariz. Aug. 11, 2014) (internal citations omitted); *see also Stud v. Cains*, No. CV-15-01045-PHX-DJH, 2018 WL 11352444, at *5 (D. Ariz. Apr. 20, 2018) ("New arguments, issues and evidence may not be raised in reply briefs absent leave of the court."); *Freitas v. Thomas*, No. CV-13-01364-PHX-SRB (ESW), 2016 WL 310718, at *4 (D. Ariz. Jan. 26, 2016) ("To the extent that a party raises a new argument or proffers new evidence and information in a reply brief, that argument or evidence is improper because the opposing party is deprived of an opportunity to respond."); *McCoy v. U.S. Collections West, Inc.*, No. CV-14-0048-PHX-LOA, 2014 WL 3898088, at *4 (D. Ariz. Aug. 11, 2014) (striking affidavit attached to reply when party had "not requested leave of the Court to file an untimely affidavit or provided any reason why he could not have raised the new information contained in his affidavit at an earlier time"); *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) (declining to consider an issue raised for the first time in a reply brief); *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 (9th Cir. 1993) (striking portions of a reply brief that presented new information).  Thus, the Reply is subject to being stricken.

Plaintiff introduced nothing to show that he requested discovery in any manner other than filing the improper reply.  The docket is devoid of any notices of service of discovery.  (Docket, generally.)  The multiple motions for extension of time, that ultimately extended the time to respond to the motion by over fourteen months, fail to even mention discovery, other than the single motion filed in May of 2023.  (Docs. 38, 39, 48,

52, 55, 57, 59, 61, 63, 65, 67, 69.)  In short, Plaintiff has not shown that he properly sought discovery that would overcome his complete failure to exhaust administrative remedies.

## VI. Conclusion

Defendants established – through a sworn declaration and authenticated documents – that there is no genuine issue of material fact regarding whether Plaintiff exhausted administrative remedies.  (Docs. 35, 36.)  Despite this Court's warning, he introduced no evidence to refute Defendants' evidence.  (Docs. 37, 71.)  Plaintiff's conclusory, speculative statements are not sufficient to create a genuine issue of material fact.  *Soremekun*, 509 F.3d at 984.  He failed to "come forward with specific facts showing that there is a genuine issue for trial."  *See Matsushita*, 475 U.S. at 587.

As demonstrated in the motion, Plaintiff failed to comply with the PLRA's requirement that he exhaust available administrative remedies before filing the Complaint.  Based on the foregoing and for the reasons set forth in the motion, Defendants respectfully request that this Court grant summary judgment on the Complaint as to all Defendants for Plaintiff's failure to exhaust administrative remedies.

RESPECTFULLY SUBMITTED:  July 8, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Denise Ann Faulk*
DENISE ANN FAULK
Assistant U.S. Attorney

Copy of the foregoing served
via CM/ECF to:

Arthur L Aidala
Law Offices of Aidala, Bertuna & Kamins PC - Brooklyn, NY
8118 13th Ave.
Brooklyn, NY 11228
Email: aidalaesq@aidalalaw.com
Attorney for Plaintiff

*s/ Diego Rivera Fuerte*
/ MSJ – Exhaustion – Reply