KAB

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Keith Raniere,

              Plaintiff,

v.

Merrick Garland, et al.,

              Defendants.

No. CV-22-00561-TUC-RCC

**ORDER**

Plaintiff Keith Raniere, who is represented by counsel, brought this civil rights action pursuant to 28 U.S.C. § 1331.  Defendants move for summary judgment.  (Doc. 35.)  Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 37), and he opposes the Motion.  (Doc. 71.)  Also pending before the Court is Plaintiff's Motion for Leave to File Statement of Facts and Controverting Statement of Facts (Doc. 73) and Defendants' Motion to Strike Plaintiff's Reply in Support of his Motion for Leave (Doc. 78).

## I.    Background

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated (1) a First Amendment right of access-to-the-courts claim based on Defendants' alleged interference with Plaintiff's ability to communicate with his attorneys and their agents (Count One); (2) a First Amendment retaliation claim based on Defendants' alleged interference with Plaintiff's right to communicate with friends, a business partner, and criminal defense attorneys and their agents about his finances, legal affairs, conditions of

confinement, and preparation for a new criminal trial (Count Two); and (3) a Sixth Amendment right-to-counsel claim based on Defendants' alleged interference with the confidential relationship between Plaintiff and his criminal defense attorney (Count Three). (Doc. 6.)  Plaintiff sued Defendants in their official capacities and seeks a declaratory judgment, prospective injunctive relief, and attorney's fees and costs.  (*Id.*)

## II.    Plaintiff's Motion for Leave

Defendants' Motion for Summary Judgment was fully briefed on July 8, 2024. Plaintiff was granted ten extensions of time to file his Response to Defendants' Motion for Summary Judgment.  More than one month after Defendants' filed their Reply in Support of their Motion for Summary Judgment, Plaintiff sought to file a Controverting Statement of Facts to Defendants' Statement of Facts in support of his Response to the Motion for Summary Judgment.  (Doc. 73.)  When he originally filed his Response, Plaintiff attached Exhibits to his Response, but he did not file a statement of facts or controverting statement of facts and did not refer to a statement of facts or controverting statement of facts in his Response.  (Doc. 71.)

In his Motion for Leave, Plaintiff asserts that he requests "leave to file supplemental documents to his Opposition to Defendants' Summary Judgment Motion, as these documents have been inadvertently omitted in Plaintiff's previous filing due to a clerical error by a staffer," and he requests that the Court accept these filings "nunc pro tunc." (Doc. 73.)  Plaintiff does not attach a Declaration by the "staffer" explaining this "clerical error," does not provide any other details about this "clerical error," and does not explain why neither the Statement of Facts nor the Controverting Statement of Facts were referenced in his Response to the Motion for Summary Judgment.

As Defendants aptly point out in their Response to the Motion for Leave, Plaintiff is not entitled to "nunc pro tunc" relief.  "Nunc pro tunc signifies now for then, or in other words, a thing is done now, which shall have the same legal force and effect as if done at [the] time when it ought to have been done."  *Singh v. Mukasey*, 533 F.3d 1103, 1110 (9th Cir. 2008).  The Court's inherent power to "make records speak the truth" is limited and

may be used only where necessary to correct a clear mistake and prevent injustice.  It does not imply the ability to alter the substance of that which actually transpired or to backdate events to serve some other purpose.  Rather, its use is limited to making the record reflect what the court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence." *Id.* (internal citation and quotation omitted).  Even if Plaintiff had shown that *his* mistake was the result of a "clerical error" (he has made no such showing), Plaintiff would not be entitled to a nunc pro tunc ruling.  Rather, Plaintiff filed an untimely Motion for Extension of Time, which is controlled by Rule 6(b) of the Federal Rules of Civil Procedure, which provides "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).  In his Motion, Plaintiff does not address excusable neglect.

Without explanation and without leave of Court, Plaintiff subsequently filed an untimely Reply in Support of his Motion for Leave where he discussed excusable neglect for the first time.  Even if the Court could consider arguments made for the first time in Reply (it cannot), Plaintiff's Reply will not be considered because it was filed 10 days after it was due without leave of Court.  Defendants' Motion to Strike the Reply will therefore be granted.

Moreover, because Plaintiff did not cite a proper basis for relief in his Motion for Leave, it should be denied on this basis alone, but even considering Plaintiff's Motion as filed pursuant to Rule 6(b), Plaintiff is still not entitled to relief.

A plaintiff who belatedly seeks an extension of time is required to make a showing of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).  The Supreme Court has established an equitable, four-part balancing test for determining whether there has been "excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  "The *Pioneer* factors include: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for

the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (en banc) (citing *Pioneer*, 507 U.S. at 395).

Here, with regard to the first factor, Defendants would be prejudiced by allowing an untimely controverting Statement of Facts. Defendants already filed a Reply in Support of their Motion for Summary Judgment based on Plaintiff's original Response, and requiring Defendants to file a new Reply would expend more time and resources. The first factor weighs against a finding of excusable neglect. With regard to the second factor, Plaintiff did not immediately seek to rectify his alleged mistake when Defendants pointed it out in their Reply in Support of their Motion for Summary Judgment. Rather, Plaintiff waited for more than one month to seek to supplement his Response; Plaintiff offers no explanation for this month-long delay. The second factor weighs against a finding of excusable neglect.

With regard to the third factor, Plaintiff's explanation that an unidentified staffer did not file a Statement of Facts lacks any supporting facts or evidence, such as a Declaration from the staffer, and Plaintiff offers no explanation for the additional month-long delay after Defendants pointed out the alleged mistake in their Reply in Support of their Motion for Summary Judgment. Moreover, the lodged Controverting Statement of Facts purports to dispute some of Defendants' facts, but does not comply with Rule 56(c)(1) of the Federal Rules of Civil Procedure or Local Rule of Civil Procedure 56.1(b) *See* Fed. R. Civ. P. 56(c)(1) (party alleging dispute must support the alleged disputes by citing to particular parts of materials in the record or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that Defendants cannot produce admissible evidence to support the facts); LRCiv. 56.1(b) ("Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.") Accordingly, despite the additional time, Plaintiff still did not comply with the Federal Rules of Civil Procedure or this Court's Local Rules. Moreover, because Plaintiff's Response does not cite to his own Statement of Facts, it is unclear how the Court would know what arguments the Statement of Facts is

meant to support.  The third factor weighs against a finding of excusable neglect.

With regard to the fourth factor, the Court simply does not have enough information about the circumstances of the alleged mistake to determine whether Plaintiff acted in good faith, but Plaintiff's subsequent unexplained and unpermitted late filing of the Reply in Support of his Motion for Leave suggests a disregard of the Court's deadlines.  Regardless, the factors weigh against a finding of excusable neglect, and Plaintiff's Motion for Leave will be denied.

## III.    Motion for Summary Judgment

### A.    Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## B. Facts

Plaintiff Keith Raniere is a federal inmate in the custody of the Federal Bureau of Prisons at the United States Penitentiary in Tucson, Arizona (USP-Tucson). (Doc. 36 ¶ 1.) Plaintiff is serving an aggregate sentence of 120-years for racketeering conspiracy, racketeering, forced labor conspiracy, wire fraud conspiracy, sex trafficking conspiracy, sex trafficking of Jane Doe 5, and attempted sex trafficking of Jane Doe 8 in violation of multiple federal statutes. (*Id.* ¶ 2.) Plaintiff is projected to be released from custody on June 27, 2120. (*Id.* ¶ 3.) On January 21, 2021, Plaintiff was given an Inmate Admission & Case Orientation (A&O) Handbook, which describes the administrative remedy process. (*Id.* ¶ 4.) On March 9, 2021, Plaintiff was briefed on the Bureau's Administrative Remedy Program as part of the A&O Program. (*Id.* ¶ 5.)

### 1. Administrative Remedy Program

The Bureau has a four-tiered Administrative Remedy Program for inmate grievances, which is codified at 28 C.F.R. § 542.10, et seq. (*Id.* ¶ 6.) The first step is informal resolution with prison staff. 28 C.F.R. § 542.13(a). Requests for Informal Resolution Forms (also known as a BP-8s) are not assigned a Remedy ID number and are not tracked. (Doc. 36 ¶ 6.) BP-8 forms require the inmate to identify: (1) the inmate's complaint; (2) the relief the inmate is requesting; and (3) efforts made by the inmate to informally resolve the complaint, including the names of the staff he contacted. (*Id.*) The second step is the filing of a formal Request for Administrative Remedy (also known as a BP-9) at the institution in which the inmate is incarcerated. (*Id.*) The BP-9 must be filed within "20 calendar days following the date on which the basis for the Request occurred." (*Id.*) If the inmate feels the response to his BP-9 is not satisfactory, within 20 calendar

days of the date the Warden signed the response, the inmate may then appeal the complaint to the Regional Director, by filing a Regional Office Administrative Remedy Appeal (also known as a BP-10).  (*Id.*)  If dissatisfied with the Regional Director's response, the inmate may appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington D.C., by filing a Central Office Administrative Remedy Appeal (also known as a BP-11).  (*Id.*)  An inmate may not raise an issue in an appeal he did not raise in a lower level filing.  (*Id.*)  The Administrative Remedy Coordinator at any level may reject and return to the inmate a Request for Administrative Remedy or appeal that does not meet the procedural requirements as outlined in the Code of Federal Regulations.  (*Id.*)  The Bureau of Prisons considers administrative remedies exhausted when all three formal levels have been followed.  (*Id.* ¶ 7.)

Since July 1990, the Bureau has maintained information related to administrative complaints filed by inmates under the Bureau Administrative Remedy Program in SENTRY.  (*Id.* ¶ 8.)  One of the many functions of the SENTRY database is to track administrative remedy complaints and appeals, and it allows one to complete a computerized search of complaints and appeals filed by a specific inmate.  (*Id.*)  Each formal complaint (i.e., BP-9, BP-10, and BP-11) is logged into SENTRY at the receiving location.  (*Id.* ¶ 9.)  If the complaint is an initial filing, it receives a unique Remedy ID Number upon initial entry, which follows the complaint throughout the appeal process. (*Id.*)  Each Remedy ID Number also contains an extender that identifies the level of review. (*Id.*)  The extension F-1 indicates the complaint was filed at the institution level (BP-9). (*Id.*)  The extension R-1 indicates the complaint or appeal was filed at the regional level (BP-10).  (*Id.*)  The extension A-1 indicates the appeal was filed at the national level (BP-11).  (*Id.*)  The number at the end of the extension may change if the remedy or appeal is initially rejected and is then re-filed due to a technical problem, such as improper form, failing to include documentation, or improper filing at that level.  (*Id.*)

Inmates have access to the Code of Federal Regulations and Bureau Program Statements, including Program Statement 1330.18, Administrative Remedy Program,

through the institution law library and the Electronic Law Library. (*Id.* ¶ 10.) When an inmate arrives at USP Tucson, he participates in an Admission and Orientation (A&O) Program, during which the inmate is introduced to important aspects of the institution and the housing unit to which the inmate is assigned. (*Id.* ¶ 11.) The A&O Program includes instructions on the Bureau's Administrative Remedy Program, how to obtain and submit the appropriate forms, and how to exhaust claims through all levels of the Administrative Remedy Program. (*Id.*) Additionally, staff members give new inmates a copy of the A&O Handbook, which provides valuable information about the institution's operations, including the Administrative Remedy Program. (*Id.*)

At USP-Tucson, to file an administrative remedy or appeal, an inmate may obtain the appropriate forms from, and submit completed forms to, any Unit Team member. (*Id.* ¶ 12.) The Unit Team is comprised of the Unit Manager, Case Manager, Correctional Counselor, and Unit Secretary. (*Id.*) While the "Correctional Counselor will initial, date, and write the inmate's last name on the top right hand section of the form for accountability purposes[,]" there is no requirement that an inmate provide a reason for needing an administrative remedy form in order to obtain that form. (*Id.*)

An Inmate Request to Staff Member (form BP-S148), commonly called a cop-out, is used to make a written request to a staff member. (*Id.* ¶ 13.) Any type of request can be made with this form[,]" to include if an inmate believes that his Unit Team is not providing him with administrative remedy forms or is not properly processing administrative remedy forms. (*Id.*) These requests or "cop-outs" can be made to any staff member, including Associate Wardens and the Warden. (*Id.*) An inmate may file an inmate request to staff (cop-out), informal grievance (BP-8), or formal grievance (BP-9, BP-10, or BP-11) while in general population or while housed in the Special Housing Unit (SHU). (*Id.*) If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. (*Id.* ¶ 14.) If an inmate has an issue that he wants to bring to the attention of staff, he can do so via a written request

1   (cop-out) at any time, as detailed above, or during in person meetings with multiple Unit

2   Team, and other, staff.  (*Id.* ¶ 15.)

3                   **2.      Plaintiff's Administrative Remedies**

4        During Plaintiff's incarceration with the Bureau, he has filed twenty administrative

5   remedies.  (*Id.* ¶ 16.)

6        In Remedy No. 1147194-F1 (10), received on January 9, 2022, Plaintiff requested

7   to return to general population.  (*Id.* ¶ 17.)  This remedy was rejected because Plaintiff did

8   not attach the attempt at informal resolution as part of his BP-9 submission.  (*Id.*)  In

9   Remedy No. 1147194-R1 (BP-10), received on April 13, 2023, Plaintiff appealed to the

10  Regional Counsel requesting to be returned to general population.  (*Id.* ¶ 35.)  This appeal

11  was rejected because Plaintiff did not attach the attempt at informal resolution as part of

12  his BP-9 submission.  (*Id.*)  He has not filed any appeals to the Office of General Counsel

13  (BP-11) associated with this administrative remedy.  (*Id.*)

14       In Remedy No. 1147196-F1 (BP-9), received on January 9, 2022, Plaintiff requested

15  to be unrestrained during legal visits.  (*Id.* ¶ 18.)  He has not filed any appeals to the Office

16  of General Counsel (BP-11) associated with this administrative remedy.  (*Id.*)  In Remedy

17  No. 1111640-R1 (BP-10), received on February 25, 2022, Plaintiff appealed disciplinary

18  sanctions imposed with respect to Incident Report No. 3547878.  (*Id.* ¶ 19.)  In the remedy,

19  Plaintiff asks, "Please expunge these shots and make this situation right."  (*Id.*)  In Remedy

20  No. 1111640-A1 (BP-11), received on June 30, 2022, Plaintiff further appealed

21  disciplinary sanctions imposed with respect to Incident Report No. 3547878.  (*Id.* ¶ 20.)

22       In Remedy No. 1147196-R1 (BP-10), received on March 30, 2023, Plaintiff

23  appealed to the Regional Counsel regarding his request to be unrestrained during legal

24  visits.  (*Id.* ¶ 33.)  This appeal was rejected because he failed to attach his attempt at

25  informal resolution with his submission.  (*Id.*)  He has not filed any appeals to the Office

26  of General Counsel (BP-11) associated with this appeal.  (*Id.*)

27       In Remedy No. 1133790-F1 (BP-9), received on September 14, 2022, Plaintiff

28  requested visitation denial information.  (*Id.* ¶ 21.)  He has not filed an appeal to the Office

of General Counsel (BP-11) associated with this administrative remedy.  (*Id.*)  In Remedy No. 1133790-R1 (BP-10), received on January 31, 2023, Plaintiff appealed to the Regional Director about visitation denial Information.  (*Id.* ¶ 29.)  He has not filed any appeals to the Office of General Counsel (BP-11) associated with this appeal.  (*Id.*)

In Remedy No. 1133798-F1 (BP-9), received on September 14, 2022, Plaintiff requested information about the denial of paralegal on his approved list.  (*Id.* ¶ 23.)  In Remedy No. 1133798-R1 (BP-10), received on January 31, 2023, Plaintiff appealed to the Regional Director about the denial of a paralegal on his approved list.  (*Id.* ¶ 28.)  In Remedy No. 1133798-A1 (BP-11), received on March 7, 2023, Plaintiff appealed to the Office of General Counsel about the denial of a paralegal on his approved list.  (*Id.* ¶ 31.) This appeal was rejected because Plaintiff did not provide a copy of his BP-9 and BP-10 and he was instructed to re-submit his appeal in proper form within 15 days from receipt of the rejection notice.  (*Id.*)  He did not resubmit his appeal to the Office of General Counsel (BP-11) in proper form.  (*Id.*)

In Remedy No. 1137228-F1 (BP-9), received on October 13, 2022, Plaintiff complained about being restrained in the SHU for legal visits and legal calls.  (*Id.* ¶ 24.) This remedy was rejected on the basis that Plaintiff did not state the basis for his request. (*Id.*)  He has not filed any appeals to the Regional Director (BP-10), or Office of General Counsel (BP-11) associated with this administrative remedy.  (*Id.*)

In Remedy No. 1139873-F1 (BP-9), received on November 3, 2022, Plaintiff requested information.  (*Id.* ¶ 25.)  This remedy was rejected on the basis that Plaintiff was limited to one request per BP-9 submission.  (*Id.*)  He has not filed any appeals to the Regional Director (BP-10), or Office of General Counsel (BP-11) associated with this administrative remedy.  (*Id.*)

In Remedy No. 1139878-F1 (BP-9), received on November 3, 2022, Plaintiff requested information regarding visitors removed from his visiting list.  (*Id.* ¶ 26.)  This remedy was rejected because Plaintiff was limited to one request per BP-9 submission. (*Id.*)  He has not filed any appeal to the Regional Director (BP-10) associated with this

administrative remedy. (*Id.*) In Remedy No. 1139878-A2 (BP-11), received on February 8, 2023, Plaintiff appealed to the Office of General Counsel (BP-11) regarding his request for information regarding visitors removed from his visiting list. (*Id.* ¶ 30.) This appeal was rejected on the basis that Plaintiff was limited to one request per submission. (*Id.* ¶ 30.) In Remedy No. 1139878-A1 (BP-11), received on February 13, 2022, Plaintiff appealed to the Office of General Counsel (BP-11) regarding his request for information regarding visitors removed from his visiting list. (*Id.* ¶ 31.) This appeal was rejected on the basis that Plaintiff was limited to one request per submission. (*Id.*)

In Remedy No. 1140848-F1 (BP-9), received on November 10, 2022, Plaintiff requested to be treated like a general population inmate during legal visits. (*Id.* ¶ 27.) This remedy was rejected on the basis that Plaintiff failed to state the basis for his request. (*Id.*) He has not filed any appeals to the Regional Director (BP-10), or Office of General Counsel (BP-11) associated with this administrative remedy. (*Id.*)

In Remedy No. 1133808-R1 (BP-10), received on March 30, 2023, Plaintiff appealed to the Regional Director regarding the loss of his contacts in TRULINCS. (*Id.* ¶ 34.) This appeal is currently pending a response with a scheduled due date of May 29, 2023. (*Id.*) Because the BP-10 is still awaiting a response by the Regional Director, Plaintiff has not filed an appeal with the Office of General Counsel (BP-11) associated with this appeal. (*Id.*)

In Remedy No. 1159102-R1 (BP-10), received on April 24, 2023, Plaintiff appealed to the Regional Director about staff. (*Id.* ¶ 36.) This appeal was rejected on the basis that the issue raised was not deemed to be sensitive and the submission was returned to Plaintiff. (*Id.*) He has not filed any appeals to the Office of General Counsel (BP-11) associated with this appeal. (*Id.*)

### C.     Rule 56(d) Relief

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may issue any appropriate order, including deferring consideration of the motion for summary

judgment or denying it, or allowing "time to obtain affidavits or declarations or to take discovery." Fed R. Civ. P. 56(d). The party requesting relief under Rule 56(d) must set forth in its affidavit or declaration: (1) "specific facts it hopes to elicit from further discovery," (2) that "the facts sought exist," and (3) that "the sought-after facts are essential to oppose summary judgment." *Family Home & Finance Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (discussing former Rule 56(f)).) "Failure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." *Id.* (internal quotation marks omitted).

Plaintiff did not file a proper Motion seeking relief pursuant to Rule 56(d), but rather included his request for such relief at the end of his Response to Defendants' Motion for Summary Judgment.[1] Plaintiff asserts that he needs the following discovery to properly respond to the Motion for Summary Judgment:

> 1. Logs: SHU entry, daily or other logs indicating the frequency, or lack thereof, of visits by Mr. Raniere's unit team to the SHU, which would bolster his claim that he was unable to access the appropriate forms in a timely manner or at all.
> 2. Policy Clarification: According to 542.14(2) "The inmate shall place a single complaint or a reasonable number of closely related issues on the form." The application of the rule is unclear and seemingly arbitrarily enforced. Who decides if issues are closely related enough, or what a reasonable number of issues is?
> 3. Reports and Investigations: Any reports responsive to Plaintiff's grievances or generated through the investigatory process. Records at each level of the process would determine if defendants were operating, as they must, in good faith, and not rejecting grievances for the smallest defect or procedural flaw, real or imagined, without investigating the issues raised.

(Doc. 71 at 16-17.)

---

[1] Plaintiff was previously granted an extension of time to respond to the Motion for Summary Judgment on the alleged ground that he needed to conduct discovery to Respond to the Motion for Summary Judgment, and Plaintiff's Motion for Extension of Time was granted. (Doc. 40.)

1    Although Plaintiff acknowledges the need for an affidavit or declaration supporting

2    a Rule 56(d) request in his Motion, he does not include one.  Moreover, Plaintiff has not

3    shown how the facts he seeks are essential to oppose summary judgment.  With regard to

4    his claim that he was denied access to forms in SHU, this is information within Plaintiff's

5    personal knowledge.  Plaintiff does not explain how 56(d) relief is appropriate to "bolster"

6    a claim he can make himself.  Plaintiff offers no explanation for how the policy clarification

7    is essential to oppose summary judgment, and cites to no specific instances where he was

8    prevented from exhausting due to a misinterpretation of such a policy.  Finally, Plaintiff

9    makes no showing that the reports and investigations he seeks are essential to opposing the

10   Motion for Summary Judgment.  Plaintiff has not shown that such reports or investigations

11   are necessary to demonstrate that he was prevented from exhausting due to an alleged

12   misapplication of the exhaustion procedures.

13   For the foregoing reasons, Plaintiff's request for Rule 56(d) relief is denied.

14   **D.    Discussion**

15   Defendants argue that, of the four appeals Plaintiff has filed with the Office of

16   General Counsel (BP-11), Remedy No. 1111640-A1 pertained to his appeal of disciplinary

17   sanctions imposed on October 26, 2021, and is unrelated to the causes of action in this

18   litigation.  Defendants assert that the remaining three appeals (Remedy Nos. 1139878-A2,

19   1139878-A1, and 1133798-A1) have been rejected for procedural reasons as reflected

20   above and Plaintiff has not re-filed or cured those filing deficiencies. Defendants assert

21   that, as a result, Plaintiff has not properly filed any appeals, in accordance with the final

22   level of the Administrative Remedy Program (Office of General Counsel (BP-11))

23   regarding his lack of access to legal calls, lack of access to legal visits, denial of Mr. de la

24   Garza, denial of social visitation, denial of Suneel Chakravorty, his general access to his

25   attorneys, or any other cause of action in this litigation.

26   In Response, Plaintiff asserts that settlement discussions engaged in with a U.S.

27   Attorney were efforts to "exhaust administrative remedies," and "[t]he failed negotiations

28   with the Office of General Counsel signify the last step in the grievance process and

demonstrate Plaintiff's efforts to exhaust administrative remedies." (Doc. 71 at 9.) Plaintiff next argues that "[a]ctions by USP Tucson administrators demonstrate an intimidating stance toward Plaintiff's due process rights by interfering and hindering his ability to overturn his conviction and his ability to exhaust administrative remedies within the prison grievance system." (Doc. 71 at 12.) Plaintiff believes that "most, if not all, the retaliatory conduct comes from a higher authority than the Warden," and concludes that "[a]s such, the grievance process was not only unavailable, it was futile." (*Id.* at 13.) Plaintiff next argues that "inmates cannot utilize the BOP grievance process for national level directives because there is no available process to grievance such decisions." (*Id.*) Plaintiff finally argues that while housed in the SHU, he is not provided access to appropriate forms to file his grievances in a timely manner. In support of this argument, Plaintiff declares: "My unit team is responsible for giving me grievance forms to allow me to formally contest this situation. . . .Because my unit team only come once a week I have a very hard time obtaining grievance forms. I ask for them, and the officer often does not remember to bring them the next week." (Doc. 71-2 at 5 ¶¶ 38-39.)[2]

### A.   Legal Standard

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

---

[2] Counsel also asserts without citation to any evidence that Plaintiff's legal work has been taken on "numerous occasions." (Doc. 71 at 15.) The arguments of counsel are not evidence, and the Court will therefore not consider this argument. *See Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("arguments and statements of counsel are not evidence").

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

## B.   Analysis

Defendants have met their initial burden of showing that there was an available administrative remedy and Plaintiff failed to exhaust this remedy.

It is undisputed that Plaintiff did not exhaust available administrative remedies ***prior*** to filing this lawsuit. Plaintiff's argument that he was not required to exhaust available administrative remedies due to settlement discussions that occurred ***after*** he filed this lawsuit is frivolous. *See* 42 U.S.C. § 1997e(a); *Vaden*, 449 F.3d at 1050 ("The bottom line is that a prisoner must pursue the prison administrative process as the first and primary forum for redress of grievances. He may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed. It would be inconsistent with the objectives of [42 U.S.C. § 1997e(a)] to let him submit his complaint any earlier than that."); *see also Cano v. Taylor*, 739 F. 3d 1214, 1220 (9th Cir. 2014) (holding that the date of filing an amended complaint can be used in determining whether exhaustion had occurred before filing the claim for claims not pleaded in the initial complaint, but the date of the amended complaint does not apply to unexhausted claims brought in the initial complaint).

Plaintiff next argues that behavior that he considers to be retaliatory in relation to

his criminal case somehow deterred him from exhausting.  Although a failure to exhaust may be excusable based on a threat of retaliation, the inmate must show that (1) the threat of retaliation actually deterred the inmate from lodging a grievance or pursuing a particular part of the process, and (2) "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing part of the grievance process that the inmate failed to exhaust." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (citation omitted).  Where there is a mere allegation of fear based on a previous hostile interaction between a prisoner and prison officials, such allegation, by itself, is not sufficient to show that a prisoner of ordinary firmness would not have pursued the grievance process.  *Id.* at 988.

Here, Plaintiff does not connect any alleged retaliation to the grievance process, and indeed, argues several times that it is administration outside the prison that is responsible for the retaliation against him, undercutting his claim that prison officials are preventing him from exhausting.  Plaintiff's allegations are general and conclusory in relation to the grievance process and certainly do not describe how any retaliatory actions prevented him from exhausting during any particular part of the grievance process for any of his specific claims.  Plaintiff merely alleges that previous actions, which he considers to be motivated by retaliation, unrelated to the grievance process somehow rendered the grievance process unavailable.  This does not establish that a prisoner of ordinary firmness would not have pursued the grievance process under the same circumstances.  *McBride*, 807 F.3d at 987. Accordingly, Plaintiff has not established that any alleged retaliation prevented him from exhausting his claims prior to bringing this lawsuit.

Plaintiff next argues that it would have been futile to follow the BOP's exhaustion process because "most, if not all, the retaliatory conduct comes from a higher authority than the Warden," and "inmates cannot utilize the BOP grievance process for national level directives because there is no available process to grievance such decisions."  (*Id.*) Plaintiff's determination that the grievance process could not be used because he determined it would be futile and could not provide him the relief he wanted is not an

exception to the exhaustion requirement.  *See Booth*, 532 U.S. at 741 n.6 ("we stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *Sapp*, 623 F.3d at 827 (even where prisoner has a good faith belief that he could not pursue administrative grievance process, he is not entitled to equitable exception to the PLRA's exhaustion requirement before suing for alleged federal civil rights violations where that subjective belief is not reasonable.).

Plaintiff's final argument that he was unable to access the appropriate forms in a timely manner also fails because Plaintiff bears the burden of showing that the administrative remedy was effectively unavailable.  It is within Plaintiff's personal knowledge as to what forms he was denied, when they were denied, what grievances the denial of such forms pertained to, and why they were denied.  Plaintiff's conclusory assertion that he was denied forms while in SHU is contradicted by the fact that he was able to file numerous grievances while in SHU.  Plaintiff does not explain how the denial of specific forms on specific occasions prevented him from exhausting his claims in this action.  Plaintiff likewise does not demonstrate that he attempted to seek an extension of time to exhaust once he gained access to the relevant forms by including an explanation as to why his grievance was untimely.  *See* 28 C.F.R. § 542.14 ("Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame.") 28 C.F.R. § 542.15 ("When the inmate demonstrates a valid reason for delay, . . . time limits [for appeals] may be extended.").  Without any detailed facts demonstrating that Plaintiff was unable to obtain forms to properly grieve specific claims in this specific action or that Plaintiff explained his inability to obtain forms to file timely grievances during the grievance process, the Court cannot find that Plaintiff has met his burden of demonstrating that the administrative remedy process was effectively unavailable.  *See Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("a conclusory, self-serving affidavit, *lacking detailed facts and*

*any supporting evidence*, is insufficient to create a genuine issue of material fact") (emphasis added).

It is undisputed that Plaintiff did not exhaust his administrative remedies on any of his claims prior to filing this action. Defendants met their burden of establishing that there was an available administrative remedy and Plaintiff did not exhaust that remedy. Plaintiff has not met his burden of demonstrating that administrative remedies were effectively unavailable. Accordingly, Defendants' Motion for Summary Judgment will be granted.

**IT IS ORDERED:**

(1)    Plaintiff's Motion for Leave to File Statement of Facts and Controverting Statement of Facts (Doc. 73) is **denied**.

(2)    Defendants' Motion to Strike Plaintiff's Reply in Support of his Motion for Leave (Doc. 78) is **granted**. The Clerk of the Court must strike Plaintiff's Reply in Support of his Motion for Leave (Doc. 77).

(3)    Defendants' Motion for Summary Judgment (Doc. 35) is **granted**, and the action is terminated without prejudice for failure to properly exhaust available administrative remedies. The Clerk of Court must enter judgment accordingly.

Dated this 24th day of September, 2024.

_____

Honorable Raner C. Collins
Senior United States District Judge